**[J-24-2018]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| CRAIG M. WHITMOYER, | : | No. 52 MAP 2017 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 614 CD |
| | : | 2015 dated December 1, 2016 |
| v. | : | Affirming the Order of the Workers' |
| | : | Compensation Appeal Board at No. |
| | : | A13-1373 dated March 20, 2015 |
| WORKERS' COMPENSATION APPEAL | : | |
| BOARD (MOUNTAIN COUNTRY | : | ARGUED: April 11, 2018 |
| MEATS), | : | |
| | : | |
| Appellees | : | |

**OPINION**

**JUSTICE DONOHUE**                                              **DECIDED: June 19, 2018**

The Pennsylvania Workers' Compensation Act ("WCA")[1] makes an employer liable

for paying the disability benefits and medical expenses of an employee who sustains an

injury in the course of his or her employment. *See* 77 P.S. §§ 431 (disability), 531

(medical). This liability attaches without regard to the employer's negligence. *See id*; *see*

*also Heckendorn v. Consolidated Rail Corp.*, 465 A.2d 609, 613 (Pa. 1983). Under

section 319 of the WCA, however, employers (or their insurance carriers) are "subrogated

to the right of the employe" and therefore entitled to reimbursement for certain expenses

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.1, 2501-2708

where a third party caused the employee's injury. 77 P.S. § 671. The instant matter addresses a specific question about the scope of this reimbursement.

Section 319 of the WCA provides, in pertinent part:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents. The employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable at the time of recovery or settlement bears to the total recovery or settlement. Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future **instalments of compensation**.

77 P.S. § 671 (internal footnote omitted) (emphasis added). We granted allowance of appeal to determine whether the Commonwealth Court erred in concluding that the term "instalments of compensation" in section 319 encompasses both disability benefits and payment of medical expenses.[2]

We recognize that the word "compensation," as used elsewhere in the WCA (including elsewhere in section 319), refers variously to one or both of these types of benefits. *See Giant Eagle, Inc. v. W.C.A.B. (Givner)*, 39 A.3d 287, 294 (Pa. 2012)

---

[2] We also granted review to consider whether the Commonwealth Court erred in finding that Mountain Country Meats did not waive its rights under section 319 by waiting thirteen years to assert a purported right to reimbursement of medical expenses. Because our resolution of the first issue disposes of this appeal, we do not reach the question of waiver.

(plurality). "Instalments of compensation," however, is a more specific term. As discussed herein, we find that it means what it says: compensation that is paid in installments. Under the WCA, disability benefits are required to be paid in this manner, namely, "in periodical installments, as the wages of the employe were payable before the injury." *See* 77 P.S. § 601. Medical expenses are not. *See* 77 P.S. § 531. Accordingly, when a workers' compensation claimant recovers proceeds from a third-party settlement (following repayment of compensation paid to date) as prescribed by section 319, the employer (or insurance carrier) is limited to drawing down against that recovery only to the extent that future disability benefits are payable to the claimant. Accordingly, and as explained herein, we reverse the decision of the Commonwealth Court.

In January 1993, Craig Whitmoyer ("Whitmoyer") suffered a work-related injury that resulted in the amputation of part of his arm. Starting at that time, his employer, Mountain Country Meats ("MCM"), or MCM's insurance carrier, Selective Insurance ("Selective"), paid all of Whitmoyer's medical expenses related to this injury. A few months later, the parties reached an agreement related to Whitmoyer's disability benefits – he was entitled "to a 20 week healing period and 370 weeks of specific loss benefits [at $237.50 per week after May 22, 1993]." Judge's Exhibit 3 (Supplemental Agreement for Compensation for Disability or Permanent Injury, 4/29/1993) (providing that "weekly wages must be computed in accordance with Section 309 of the [WCA]").[3] Whitmoyer subsequently petitioned for a commutation of these weekly payments. In December 1994, the Workers'

---

[3] This supplemental agreement provided that "compensation was paid from 1/2/93 thru [sic] 5/21/93 for 20 weeks at a rate of $158.33 per week for a total of $3,166.60, which includes both the waiting period and the healing period." Judge's Exhibit 3. Section 309 of the WCA sets forth the method of computing a claimant's wages at the time of his or her injury for the purpose of determining compensation. *See* 77 P.S. § 582.

Compensation Judge ("WCJ") granted his petition and directed MCM or Selective to pay Whitmoyer a lump sum payment of $69,994.64. While this commutation resolved his entitlement to disability benefits entirely, MCM remained responsible for Whitmoyer's ongoing medical bills. Judge's Exhibit 4 (Commutation Decision and Stipulation of Facts, 12/27/1994).

Several years later, Whitmoyer obtained a $300,000 settlement from third parties related to his injury and, in April 1999, he entered a third-party settlement agreement (the "TPSA") with Selective providing that as to past-paid compensation, Selective was entitled to a net subrogation lien of $81,627.87. *See* Selective's Exhibit 7 (TPSA).[4] The net subrogation lien represents the difference between Selective's total accrued subrogation lien ($110,583.73) and Selective's pro rata share of the third-party litigation expenses ($28,955.86). *Id.* Thus, under the terms of the TPSA, Whitmoyer's "balance of recovery" was $189,416.27. *Id.* This term is defined on the form as a "fund for credit against future workers' compensation payable, subject to reimbursement to claimant of expenses of recovery at the rate of 37% on credit used." *Id.*

In communicating with Selective about the TPSA, Whitmoyer's counsel sent two letters to Jodi Bell ("Bell"), Selective's claims adjuster. In the first letter, dated March 8, 1999, counsel forwarded the TPSA, noted that "the lien of [Selective] can be satisfied in full with payment of $81,627.87" pursuant to section 319, and asked "that [Selective]

---

[4]    The third-party settlement agreement between Selective and Whitmoyer is memorialized on a boilerplate form supplied by the Bureau of Workers' Compensation (the "Bureau") for such agreements. The form provides, "In accordance with Section 319 of the Pennsylvania [WCA], parties herein have agreed to the following distribution of proceeds received from Hollymatic Corporation & Dantro Associates, Inc, third party." Selective's Exhibit 7 (TPSA).

remain responsible for payment of future medical expenses incurred by Mr. Whitmoyer." Selective's Exhibit 6 (March Letter from Donald F. Smith, Jr.). In the second letter, dated May 26, 1999, counsel enclosed a check for $81,627.13 and advised Selective of Whitmoyer's position that "no credit can be applied to future medical bills" because "under Section 319 such credit only applies to 'future installments of compensation'," which does not encompass "future medical expenses." Selective's Exhibit 8 (May Letter from Donald Smith, Jr.). Selective cashed the check but did not respond to the letter. The TPSA, dated April 8, 1999, bears Bell's name and signature but was never signed by Whitmoyer's counsel.

Selective continued to pay Whitmoyer's work-related medical expenses in full (without taking credit under the TPSA) for approximately thirteen years, until September 2012. At that time, Selective filed a modification petition requesting an adjustment to the TPSA to reflect the medical expenses incurred since the parties entered the agreement. Crediting the testimony of Bell that she did not have authority to agree to counsel's interpretation of "future installments of compensation" as set forth in his May 1999 letter, the WCJ granted Selective's petition. In addition, the WCJ found as a matter of fact that the TPSA made Selective liable to Whitmoyer "for 37% of future medical expenses, up to the balance of recovery." *See* Decision and Order of the WCJ, 10/17/2013, at 2. The WCJ also found, per the parties' stipulation, that Selective had paid $206,670.88 for Whitmoyer's work injury as of February 2013. *Id.* The WCJ ordered that Selective's percentage credit be reduced to 26.09% of future medical expenses, up to Whitmoyer's balance of recovery amount of $189,416.27. *Id.* at 4.

Whitmoyer appealed to the Workers' Compensation Appeal Board (the "Board"), arguing that the TPSA was unenforceable because neither he nor his counsel had signed it. Board Op. at 2. He also argued that the WCA only allows credit on account of future installments of compensation, namely, "indemnity benefits," none of which, in his case, remained to be paid. *Id.* Finally, citing his attorney's March and May 1999 letters and Selective's course of conduct since that time, he urged that the parties had agreed that no credit would be applied toward future medical bills, and that Selective had waived its subrogation rights and should be equitably estopped from now raising this claim. *Id.*

The Board affirmed, finding no merit to Whitmoyer's claim that the TPSA was unenforceable or that the March and May 1999 letters created a binding agreement barring Selective from taking a credit on future medical expenses. *Id.* at 6-7. As to Whitmoyer's argument that section 319 does not permit credit to be taken on future medical expenses because they are not "instalments of compensation," the Board held that "it is well settled that medical expenses are **compensation** payments subject to subrogation rights against a claimant's recovery from a third party and subject to credit toward future compensation where the recovery exceeds compensation paid at the time of recovery." *Id.* at 7 (citing *Deak v. W.C.A.B. (USX Corp.)*, 653 A.2d 52 (Pa. Commw. 1994)) (emphasis added). Moreover, the Board explained that Bell's credible testimony belied the assertion that Selective chose to waive its subrogation right, which is generally "absolute and can be abrogated only by choice." *Id.* at 9 (noting that Bell did not have the authority to agree to, nor did she respond to, any of the assertions in counsel's letters). Finally, the Board concluded that equitable estoppel was inappropriate under the

circumstances because Selective never agreed to forgo its right to subrogation for future medical expenses, and the WCA contains no equitable exceptions. *Id.* at 9-10.

In a divided en banc opinion, the Commonwealth Court affirmed. The intermediate appellate court first outlined the three objectives underlying section 319, as identified by this Court in *Dale Mfg. Co. v. W.C.A.B. (Bressi)*, 421 A.2d 653, 654 (Pa. 1980): (1) to prevent double recovery by a claimant, (2) to ensure that a non-negligent employer avoids responsibility for compensation payments necessitated by a negligent third party, and (3) to prevent a negligent third party from escaping liability.[5] *Whitmoyer v. W.C.A.B. (Mountain Country Meats)*, 150 A.3d 1003, 1014 (Pa. Commw. 2016) (en banc). It then reasoned that Pennsylvania appellate courts have concluded on multiple occasions that medical expenses constitute "compensation" under section 319. *Id.* at 1012-13 (discussing *Deak*, 653 A.2d at 54, *Dasconio v. W.C.A.B. (Aeronca, Inc.)*, 559 A.2d 92, 103 (Pa. Commw. 1989), and *Haley to Use of Martin v. Matthews*, 158 A. 645, 646-47 (Pa. Super. 1932)). Even while recognizing that no court, least of all this one, has addressed whether the General Assembly's use of the distinct term "instalments of compensation" in the last sentence of section 319 limits subrogation to credit for disability benefits only, the Commonwealth Court nonetheless concluded that employers are entitled to seek reimbursement for medical expenses from the employee's balance of recovery under section 319. *Id.* at 1013-15.

The Commonwealth Court then discussed *Giant Eagle. Id.* at 1014. In that case, a plurality of this Court indicated that a case-by-case analysis of the meaning of

---

[5] It is worth noting that we discussed the rationale behind subrogation in section 319 after citing the beginning of that provision, only, and without any reference to "instalments of compensation." *See Dale Mfg. Co.*, 421 A.2d at 654.

"compensation," as used in article III of the WCA, is required whenever that word is capable of at least two valid interpretations. *Giant Eagle*, 39 A.3d at 298 (conducting an ambiguity analysis as to the meaning of "compensation" in section 314(a) and concluding that it "need not always include medical benefits"). Finding that there are at least two interpretations of "compensation" as used in section 319, the Commonwealth Court indicated it would resolve the ambiguity by reference to the purpose of the statutory provision. *Whitmoyer*, 150 A.3d at 1014-15 (citing 1 Pa.C.S. § 1921(c)). One objective of subrogation, as noted supra, is to protect the "presumably [] innocent" employer from ultimate liability. Because this rationale applies with equal force to medical expenses and disability benefits, the Commonwealth Court reasoned that "compensation" (and even "instalments of compensation") as used in section 319 must be construed to encompass both types of payments. *Id.*

The Commonwealth Court added that the General Assembly's use of the word "instalments" could be explained by the fact that medical expenses are not typically paid in a lump sum but instead must be paid "periodically overtime" or in "discrete payments." *Id.* at 1015. Finally, the Commonwealth Court found no merit to Whitmoyer's position that allowing an employer to seek reimbursement for medical expenses violates section 306(f.1) by shifting liability for the cost of medical care from the employer to the claimant. Instead, allowing an employer to seek reimbursement for these expenses from Whitmoyer's balance of recovery was simply "a right expressly agreed upon in the [TPSA]." *Id.*

In dissent, President Judge Leavitt (joined by Judges Cosgrove and McCullough) argued that the majority's interpretation of section 319 gives no effect to the General

Assembly's inclusion of the word "instalment" in the final sentence. She reasoned that section 306(f.1)(7) makes the employer responsible for all medical expenses and posited that allowing an employer to seek reimbursement from the employee's third party recovery, after the accrued subrogation lien is resolved, improperly "turns the statutory scheme on its head." *Id.* at 1022 (Leavitt, P.J., dissenting). In addition, she noted that the word "installment" is defined in the dictionary as "one of the parts into which a debt is divided when payment is made at intervals" and that only disability benefits are "made at intervals." *Id.* at 1022-23 (citing Merriam-Webster's Collegiate Dictionary 605 (10th ed. 2001). Furthermore, whereas section 319 refers to "compensation **paid or payable** at the time of recovery or settlement," the General Assembly did not use the symmetrical word "payment" when delineating the type of benefits for which an employer could claim credit after settlement. *Id.* at 1023. Instead, the General Assembly chose "**future instalments** of compensation," thus deliberately limiting future charges against the employee's recovery to disability benefits. *Id.*

Judge Cosgrove also separately dissented (joined by the President Judge and Judge McCullough) to emphasize, as relevant here, that there is clearly "a certain regularity … attached to the concept of 'interval'" in the definition of "installment." *Id.* at 1023 (Cosgrove, J., dissenting). He concluded that disability benefits are distributed with regularity whereas medical expenses are typically incurred on a random and uncertain basis. *Id.*

On appeal, Whitmoyer argues that the Commonwealth Court's decision improperly reads the word "instalments" out of section 319. He also notes that the cases cited by the Commonwealth Court are concerned with what the term "compensation" means,

generally, and not with the meaning of "instalments of compensation." Whitmoyer's Brief at 16-19. He insists that section 308 of the WCA supports his position that "instalments of compensation" refers to disability benefits, but not medical expenses, because that section states, "except as hereinafter provided, all compensation payable under this article shall be payable in periodical installments, as the wages of the employe were payable before the injury." *Id.* at 19 (quoting 77 P.S. § 601). Whitmoyer juxtaposes the disability payments made in "periodical installments," with section 306(f.1)(1)(i), which requires the employer to make medical payments "as and when needed." *Id.* at 19-20 (quoting 77 P.S. § 531(1)(i)). Finally, he argues, in the alternative, that the Commonwealth Court erred in not finding that Selective waived its right to seek any reimbursement for medical expenses from Whitmoyer's balance of recovery. *Id.* at 23-26.

MCM takes the position that courts have consistently interpreted the word "compensation" in section 319 to encompass both disability wages and medical expenses. MCM's Brief at 5-17. Like the Commonwealth Court below, MCM urges that prohibiting an employer from recouping the cost of medical expenses after its initial lien has been satisfied undermines the purpose of section 319 by facilitating a double recovery for the employee and by forcing the non-negligent employer to bear the costs of a third party's negligence. *Id.* at 12-13, 20 (citing *Dale Mfg. Co.*, 421 A.2d 653).

In addition, MCM posits that the TPSA must be read to evidence the Bureau's understanding of section 319, namely that "where the balance of recovery exceeds the accrued lien, the balance of recovery is a fund to be depleted by payment of credits to the injured worker as a percentage of future compensation which becomes payable."

MCM's Brief at 22 (noting that there is nothing on the form to denote that credit applies only to future disability benefits). Moreover, MCM contends that the TPSA has no meaning if the "37%" figure therein only relates to disability benefits, because Whitmoyer is not owed any future disability benefits. Thus, according to MCM, in drafting the TPSA, Whitmoyer's counsel acknowledged that Whitmoyer's balance of recovery was subject to a 37% credit toward future medical expenses. *Id.* at 22-23 (arguing that Whitmoyer's counsel should have inserted "zero" or "disputed" instead of "37%" if he believed no credit could be taken for future medical expenses). Finally, MCM argues that it has not waived any rights. *Id.* at 28-34.

In an amicus brief in support of Whitmoyer, the Pennsylvania Association for Justice ("PAJ") focuses on the structure of section 319, characterizing the provision as presenting two distinct scenarios. PAJ's Brief at 7. The first two sentences of section 319 set forth the employer's entitlement to subrogation at the time of a third-party recovery. This encompasses "compensation" already paid and therefore contemplates a reimbursement for both disability benefits and medical expenses paid out to date. By contrast, the final sentence refers to "future instalments of compensation," which refers only to disability benefits still outstanding at the time of settlement. *Id.*

We are called upon to interpret the term "instalments of compensation" in section 319 of the WCA. The proper interpretation of a statute is a question of law as to which our standard of review is de novo, and our scope of review is plenary. *Borough of Heidelberg v. W.C.A.B. (Selva)*, 928 A.2d 1006, 1009 (Pa. 2007). As with all questions of statutory interpretation, we are guided by the rules of construction, 1 Pa.C.S. §§ 1901-1991. First and foremost, these rules provide that the object of interpretation is to

"ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). In pursuing this goal, we must take care to give meaning to every word and provision of the statute. *Id.*

Moreover, the statute's plain language generally offers the best indication of legislative intent, and we are instructed to give the statute its obvious meaning whenever the language is clear and unambiguous. 1 Pa.C.S. § 1921(b). To that end, we will construe words and phrases according to their common and approved usage. 1 Pa.C.S. § 1903(a). In addition, in determining whether language is clear and unambiguous, we must assess it in the context of the overall statutory scheme, construing all sections with reference to each other, not simply examining language in isolation. *See Housing Authority of County of Chester v. Pennsylvania State Civil Service Com'n*, 730 A.2d 935, 945-46 (Pa. 1999); *see also Commonwealth v. Office of Open Records*, 103 A.3d 1276, 1285 (Pa. 2014) (concluding that the statutory term at issue was unambiguous by reference to surrounding statutory provisions). Only if we determine that the statutory text is ambiguous may we look to considerations beyond the text such as the mischief to be remedied by the statute or what gave rise to its enactment. 1 Pa.C.S. § 1921(c).

Initially, we observe that section 319 addresses two distinct scenarios. *See Rollins Outdoor Advertising v. W.C.A.B.*, 487 A.2d 794, 796 (Pa. 1985). First, "the compensation paid by the employer to the date of the third-party recovery constitutes a claim against the recovery, payable immediately upon recovery to the employer." *Id.* As to this scenario, the General Assembly chose to use the word "compensation" without modification by the term "instalments of." That is, an employer's subrogation right "at the time of recovery or settlement" encompasses all "compensation" "theretofore paid" or "payable" to date. 77

P.S. § 671. This amount is understood to be the employer's accrued subrogation lien or "total lien."[6] *See* Selective's Exhibit 7 (TPSA).

The second scenario relates to the distribution of net settlement proceeds, namely what is left of the recovery after the employer has been reimbursed for "compensation thereofore paid." *See id.*; *see also Rollins Outdoor Advertising*, 487 A.2d at 796. Regarding this "excess" amount, section 319 provides that it shall be "paid forthwith" to the employee to be treated as an "advance payment by the employer" — not as to "compensation" but rather "on account of future instalments of compensation." 77 P.S. § 671.

There is no dispute that the term "compensation" – as it appears three times unmodified by "instalments of" – encompasses both medical expenses and disability benefits. *See* MCM's Brief at 4-10; Whitmoyer's Brief at 18. Indeed, Whitmoyer concedes that a non-negligent employer has a right to be reimbursed for any disability benefits and medical expenses accrued "up to the date of settlement." S*ee* Whitmoyer's Brief at 18; 77 P.S. § 671. But the terms "compensation" and "instalments of compensation" are distinct and we are tasked here with interpreting the latter, more specific, term. To conclude that "instalments of compensation" carries the same meaning as "compensation" would render the words "instalments of" meaningless. Our rules of statutory construction do not permit such a result. *See* 1 Pa.C.S. 1921(a); *see also Commonwealth v. Lobiondo*, 462 A.2d 662, 664 (Pa. 1983).

---

[6] As noted, this amount is reflected in Part II of the TPSA (relating to the distribution of proceeds) as the employer's "total lien." *See supra* p. 4; *see also infra* p. 18 (explaining that the TPSA reflects MCM's total lien amount at the time of settlement as $110,583.33, before pro rata expenses).

As set forth in President Judge Leavitt's dissenting opinion, Merriam-Webster's dictionary provides that an "installment" is "one of the parts into which a debt is divided when payment is made at intervals." *See Whitmoyer*, 150 A.3d at 1022-23 (Leavitt, P.J., dissenting). While a dictionary definition is not dispositive as to the plain meaning of a statutory term, an examination of the overall statutory scheme confirms that the legislature intended "instalments of compensation" to be limited to compensation that is paid at "periodical" intervals (e.g. weekly or bi-weekly) in the same way that an employee's wages were paid. *See* 77 P.S. §§ 601, 603. Disability benefits, but not medical expenses, are payable in this manner. *See id.*

This result necessarily obtains because section 308 of the WCA states, "Except as hereinafter provided, all compensation payable under this article shall be payable in periodical installments, as the wages of the employe were payable before the injury." 77 P.S. § 601. The reference to wages, and to the manner in which wages are paid, makes plain that this provision, relating to "compensation payable in periodical installments," addresses the subset of workers' compensation aimed at replacing lost wages. *See id.* Cases interpreting section 308 bear out this conclusion. For example, in *Staller v. Staller*, 21 A.2d 16 (Pa. 1941), after discussing section 308 of the WCA, this Court noted that section 316 of the same article authorizes the commutation of compensation and explained that "[c]ommutation of periodical payments is not applicable to medical and hospital expenses." *Id.* at 17; *see also Essroc Materials v. W.C.A.B.(Braho)*, 741 A.2d 820, 824 (Pa. Commw. 1999) (providing that section 308, "in furtherance of the inherent humanitarian purposes of the [WCA], requires that compensation be paid in the same periodic installment as a claimant's wages were paid before the injury, thus alleviat[ing]

the economic burdens caused by a claimant's loss of earning power"); *Bates v. W.C.A.B. (Titan Const. Staffing, LLC)*, 878 A.2d 160, 163 (Pa. Commw. 2005) (confirming that employer was required to pay benefits on a weekly basis so as "to mirror claimant's pay schedule prior to his injury").

Section 317, which addresses the payment of a lump sum in trust, also demonstrates that the term "future instalments of compensation" refers exclusively to disability benefits. *See* 77 P.S. § 603. That section provides that "a sum equal to all future instalments of compensation may (where death or the nature of the injury renders the amount of future payments certain) … be paid by the employer" to a bank, insurance company or trust company. 77 P.S. § 603. Because death would defeat the need for future medical expenses and because medical expenses are not capable of predetermination in a way that renders their future amount "certain," the General Assembly's inclusion of this parenthetical phrase indicates that "future instalments of compensation" refers only to disability benefits.[7] *See id.* That section 317 further provides that the trustee must make payments from said fund "in the same amounts and **at the same periods** as are herein required of the employer," is additional evidence that "instalments of compensation" encompasses payments made at set intervals under the WCA. *Id.* Again, only disability benefits are paid in this way. 77 P.S. § 601.

The foregoing provisions stand in contrast to section 306(f.1)(1)(i) which provides that "the employer shall provide payment in accordance with this section for reasonable surgical and medical services … **as and when needed**." 77 P.S. § 531(1)(i) (emphasis

---

[7] Moreover, under the WCA, the nature of an injury may determine with certainty the amount of disability benefits to which an injured employee is entitled. *See* 77 P.S. § 513.

added).  Notably, this section does not speak in terms of installments or periods, but instead recognizes that medical expenses arise unpredictably, based upon the individualized and changing needs of an injured employee.[8]

Returning to section 319, we observe further that the "excess" recovery from a third-party settlement is to be "paid forthwith" to the employee as an "advance payment by the employer on account of any future instalments of compensation." 77 P.S. § 671. MCM refers to this "excess" as having strings attached, noting that "the recipient … is on notice that the funds are being distributed to them only conditionally, and that they are not free to utilize these funds however they wish." MCM's Brief at 11.  But the statutory language does not support MCM's position.  Nothing in section 319 indicates that the employee is receiving his or her recovery "conditionally."  The plain language provides that the employee is receiving an "advance payment." 77 P.S. § 671.  The fact that this advance is "on account of any future instalments of compensation" does not imply that the employee will later have to relinquish his advance funds, nor is this the common usage of "advance payment."

Construing the sentence to encompass only disability benefits is consistent with the concept of an "advance payment."  As to disability benefits, which are known amounts

---

[8]  Taken together, sections 308, 317, and 319 of the WCA render unreasonable the Commonwealth Court majority's position, adopted by MCM, that "the Legislature's use of the word 'instalments' can reasonably be explained and harmonized with the fact that future medical expenses, which generally may occur **periodically** over time, are typically not costs payable in a lump sum.  Rather, it is more likely that an employer or insurer will have to make discrete payments on an ongoing basis."  MCM's Brief at 18 (quoting *Whitmoyer,* 150 A.3d at 1015) (emphasis in original).  It is clear that "instalments" are related to "periodical" payments made in the nature of wages, not payments that occur "as and when needed," in the nature of medical expenses.  *Compare* 77 P.S. § 601, *with* 77 P.S. § 531.

paid at established intervals, the "excess" recovery is a true "advance payment." The employee has simply been paid in advance for outstanding instalments owed to him, and the money is his to do with as he chooses. The logical corollary is that the employee will not receive any additional disability compensation from the employer (up to the amount of the recovery) nor is he obligated to reimburse the employer for any amount. To that end, this Court has explained that dividing the balance of recovery by the weekly compensation rate results in what is known as the employer's "grace period." *See P & R Welding & Fabricating v. W.C.A.B. (Pergola)*, 701 A.2d 560, 563-64 (Pa. 1997). The "grace period" represents the number of weeks an employer may abstain from paying "future installments" of disability benefits by charging them against the employee's recovery balance. *Id.* (recognizing that an employer would still be obligated under section 319 to reimburse the employee for legal expenses attributable to this period).

Unlike disability benefits, future medical expenses are unknown at the time of settlement. As MCM concedes, the insurance carrier pays medical bills upfront. MCM's Brief at 26. Thus, in order to recoup its costs, the insurance carrier would have to require the employee to relinquish some of its "advance payment," in derogation of the plain meaning of that term. Indeed, finding that "instalments of compensation" encompasses future medical expenses would undermine the clear language of section 319 by turning the employee's "advance payment" into a type of loan.

In sum, after satisfying the employer's accrued subrogation lien, which encompasses "compensation" payments made by the employer toward both disability benefits and medical expenses prior to the third-party settlement, the General Assembly intended the excess recovery to be paid to the injured employee and to be treated as an

advance payment only on account of any future disability benefits. *See* 77 P.S. 671. The fact that, in this case, Whitmoyer was not owed any outstanding disability benefits is wholly irrelevant to our analysis.

Similarly, because we granted allocatur to determine the meaning of a statutory term, the parties' arguments that are specific to the TPSA, rather than to the language of the statute, are unavailing. Nonetheless, we find no merit to MCM's contention that Whitmoyer's counsel knew, by virtue of filling in the "37%" figure on the TPSA, that his client's balance of recovery would be susceptible to diminution for future medical expenses paid by the employer. MCM's Brief at 22-23. MCM characterizes this figure as relevant only to future expenses, and therefore only to medical expenses, because Whitmoyer's disability benefits had been commuted many years prior. *Id.* This characterization is both inaccurate and inconsistent with section 319's command that "the employer shall pay that proportion of the attorney's fees and other proper disbursements that the amount of compensation paid or payable **at the time of recovery or settlement** bears to the total recovery or settlement." 77 P.S. § 671 (emphasis added).

The Bureau's instructions for filling in the blanks of the boilerplate third-party settlement agreement provide, inter alia, that the "rate of reimbursement to the employee of expenses of recovery is determined by dividing the workers' compensation lien by the gross recovery." Selective's Exhibit 2 (Instructions). Here, the employer's total accrued lien amount was $110,583.33. Dividing that amount by $300,000, the gross recovery from the third party, yields a rate of reimbursement to the employee of thirty-seven percent. This rate is then used, as prescribed, to calculate MCM/Selective's pro rata share of recovery expenses **to date**. The total expenses of recovery are listed on the

TPSA as $78,259.09. Thirty-seven percent of that amount is $28,955.86, which is set forth as the employer's pro rata share. This figure is then subtracted from the total lien amount to arrive at the employer's "net recovery of Workers' Compensation Lien," or $81,627.87. *See* Selective's Exhibit 7 (TPSA) at Part II(A)-(B). Thus, the "37%" figure is both required by the Bureau and material to calculating the employer's net entitlement to subrogation **at the time of settlement**.

Viewing "instalments of compensation" in context, with reference to surrounding language and the overall statutory scheme, we conclude that the term is clear and unambiguous. It does not refer to medical expenses. Therefore, having satisfied its accrued subrogation lien at the time of settlement, an employer is not permitted to seek reimbursement for future medical expenses from the employee's balance of recovery.

Because we find that "instalments of compensation" is unambiguous, we need not consider other factors to divine legislative intent. *See* 1 Pa.C.S. § 1921(c). Accordingly, discussion of the purpose or rationale behind section 319, which animated the Commonwealth Court majority's opinion, is unnecessary. Even if we were to engage in an ambiguity analysis, our conclusion would be unchanged. Contrary to MCM's assertions, reading "instalments of compensation" to exclude medical expenses does not undermine the rationale behind section 319. *See Dale Mfg. Co.*, 421 A.2d at 654. Regarding the potential ill of an employee making a "double recovery," we observe that this would be impossible to know in the context of a settlement, where the amount of recovery is a lump sum that does not neatly or necessarily breakdown by category of damages.

As to the other stated purposes of section 319, we note that the provision's protection of "innocent" employers has its limits. The WCA's default is to hold an employer liable for an employee's work-related injury. *See* 77 P.S. §§ 431 (disability benefits), 531 (medical expenses). Indeed, in the instant matter, MCM concedes that even if we found in its favor, its liability would be circumscribed "only to the extent of [Whitmoyer's] third party recovery." MCM's Brief at 21. Once that amount is exceeded, MCM (or Selective) would again be required to pay Whitmoyer's medical expenses in full, "potentially for the lifetime of the injured worker[]." *Id.* Finally, it bears emphasizing that the conclusion we reach today is wholly consistent with the remedial nature of the WCA, which should be interpreted for the benefit of the worker and liberally construed to effectuate its humanitarian objectives. *Peterson v. W.C.A.B (PRN Nursing Agency)*, 597 A.2d 1116 (Pa. 1991); 1 Pa.C.S. § 1928.

The decision of the Commonwealth Court is reversed.

Chief Justice Saylor and Justices Baer, Todd, Dougherty, Wecht and Mundy join the opinion.