J-A27003-18

2019 PA Super 98

| | | |
|---|---|---|
| SCIOLI TURCO, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DENISE PRIOLEAU AND  RASHEED F. | : | |
| PRIOLEAU AND  ISIAH N. BURNS | : | |
| 3206 PEARL STREET PHILADELPHIA, | : | |
| PA 19104  OPA/BRT: 241155400 | : | No. 422 EDA 2018 |

Appeal from the Order December 20, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  August Term, 2017 No. 1535

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

OPINION BY BOWES, J.:                    **FILED MARCH 29, 2019**

Scioli Turco, Inc. ("STI") appeals from the order that denied its petition for the appointment of a conservator pursuant to the Abandoned and Blighted Property Conservatorship Act ("the Act").  We affirm.[1]

On August 17, 2017, STI, a not-for-profit corporation, filed a petition to have itself appointed conservator of 3206 Pearl Street ("the Property") "to take possession of, rehabilitate and/or demolish" the Property.  Petition, 8/17/17, at unnumbered 1.  The petition identified Denise Prioleau, Rasheed F. Prioleau, and Isiah Burns ("Owners") as the owners of the Property.  **Id**. at

---

[1] Although we disagree with the trial court's basis for denying STI's petition, we may affirm on any basis apparent from the record.  **See**, **e.g.**, **Commonwealth v. Smith**, 194 A.3d 126, 138 (Pa.Super. 2018) ("To the extent our legal reasoning differs from the trial court's, we note that as an appellate court, we may affirm on any legal basis supported by the certified record.") (internal quotation marks omitted).

¶ 9.   The petition alleged, *inter alia*, that the Property was open and unsecured; presented a public nuisance; required major rehabilitation including a new roof, new floors and walls, and updated plumbing and heating; created a hazard through the accumulation of debris and uncut vegetation; and had not been occupied for the prior twelve months.  The petition further averred that Owners had failed to take reasonable steps to secure the Property and take necessary remedial measures.  *Id*. at ¶¶ 16, 19-30.

The trial court scheduled a hearing that was ultimately held on December 13, 2017, at which Denise and Rasheed appeared *pro se*.  STI presented evidence in support of its petition, including the testimony of Helma Weeks, who had lived in the neighborhood for twenty years, and Ryan Spak, who runs Project Rehab, a nonprofit program that had been monitoring the Property since 2013.  Ms. Weeks indicated that the Property appeared to be dilapidated, unkempt, and unkept.  N.T. Hearing, 12/13/17, at 10-11.  She also never noticed anyone living in the Property when she walked by it approximately twice each month.  *Id*. at 13.  Mr. Spak viewed the outside of the Property numerous times over the years, including three times in 2017. He had seen the interior twice, the last time being in 2014.  Mr. Spak testified that the Property was a gutted shell in 2014, with exposed wires,  portions of the floor and roof completely rotted, water damage, and no windows.  *Id*. at 37-42.  Mr. Spak further stated that the Property was "blatantly vacant," that no one had been occupying the Property for the past year, and that "[i]f

someone was living there it would violate every building code the City has."
*Id*. at 25, 40, 42.  Mr. Spak indicated the Property was "a beacon for all the
things that make a neighborhood unsafe." *Id*. at 39.  Mr. Spak acknowledged
that he had spoken with Mr. Prioleau about Mr. Prioleau performing the work
himself, and reminding him that, to do so, he would require permits.  *Id*. at
46.  Mr. Spak also testified that Owners, when he spoke to them in the early
summer of 2017, gave no indication that they had performed any work toward
accomplishing their goals in rehabilitating the Property.  *Id*. at 25.

Mr. Prioleau testified that he has an associates degree in architectural
design and is certified as a contractor.  *Id*. at 60.  He conceded that there
were licensing and inspection violations against the Property, that he had not
applied for any permits to perform work on it, and that the Property was not
insured at the time of the hearing.  *Id*. at 55-56, 61.  However, he stated that
he was informed that he did not require permits to do the work himself, and
had begun gutting the inside in 2015 and working on the exterior one week
before the conservatorship petition was filed.  *Id*. at 53-54, 56.  Mr. Prioleau
provided photographs, all taken on or after September 23, 2017, to show his
efforts on the exterior, but he had none of the interior.  *Id*. at 66-69, 75.  He
indicated that it would take him approximately one year to complete all of the
work himself.  *Id*. at 72.

Mr. Prioleau further testified that he visited the Property every day
between acquiring it in 2012 and the filing of the conservatorship petition.  *Id*.

- 3 -

at 53. He stated that he had been living there for three or four years, sleeping there three nights per week. *Id*. at 63. Mr. Prioleau used the Property's address on his driver's license and for his voter registration. *Id*. at 63-64. He indicated that the Property had running water until he turned it off to replace a cracked line, and that he used a generator for electricity until he had the electric turned on three months prior to the hearing. *Id*. at 59, 64, 74.

Upon receiving all of the evidence, the trial court took the matter under advisement. On December 20, 2017, the court entered an order denying the petition because "the Property at issue has been and remains occupied and therefore [is] not subject to" the Act. Order, 12/20/17. STI filed a post-trial motion for reconsideration,[2] which the trial court denied by order of January 16, 2018. STI filed a timely notice of appeal on January 19, 2018. The trial court did not order STI to file a statement of errors complained of on appeal, but did author an opinion pursuant to Pa.R.A.P. 1925(a).

This Court dismissed STI's appeal after it failed to appear for scheduled oral argument. Upon STI's timely filing of an application to reinstate the

---

[2] Motions for post-trial relief filed pursuant to Pa.R.C.P. 227.1 are required to preserve issues on appeal following a hearing on a petition under the Act. *See G & G Inv'rs, LLC v, Phillips Simmons Real Estate Holdings, LLC*, 183 A.3d 472 (Pa.Super. 2018). STI's filing, styled a "Motion for Reconsideration," rather than a "Motion for Post-trial Relief," requested that the trial court reconsider its decision because Mr. Prioleau's occupation of Property did not qualify as legal occupation. This Court has held that such a filing qualifies as a motion for post-trial relief under Pa.R.C.P. 227.1*. See Gemini Equip. Co. v. Pennsy Supply, Inc.*, 595 A.2d 1211, 2014 (Pa.Super. 1991).

- 4 -

appeal, this Court granted panel reconsideration by order of January 23, 2019.

Accordingly, we now consider the following question presented by STI: "Did

the trial court err[] by finding the Property was 'legally occupied' pursuant to

[the Act] where the Property's condition, unsafe violations, and/or illegal use

made it incapable of legal occupation?"  STI's brief at 7.

We begin with the applicable standard of review.

> Our review in a non-jury case is limited to whether the findings of
> the trial court are supported by competent evidence and whether
> the trial court committed error in the application of law.  We must
> grant the court's findings of fact the same weight and effect as
> the verdict of a jury and, accordingly, may disturb the non-jury
> verdict only if the court's findings are unsupported by competent
> evidence or the court committed legal error that affected the
> outcome of the trial.

*G & G Inv'rs, LLC v. Phillips Simmons Real Estate Holdings, LLC*, 183

A.3d 472, 478 (Pa.Super. 2018)

The trial court held that STI failed to establish the first condition for the

appointment of a conservator provided by the Act: that, as of the date of the

filing of the petition, "[t]he building has not been legally occupied for at least

the previous twelve months."  68 P.S. § 1105(d)(1).  In construing this

language, the trial court initially focused upon the definition of "occupy" – "to

live or stay in (a place)."  Trial Court Opinion, 2/20/18, at unnumbered 5[3]

(quoting Black's Law Dictionary (10th ed. 2014) (cleaned up).  The trial court

---

[3] It appears that the trial court's opinion is missing one or more pages.  Our
citations are based upon the number of pages in the filed document.

found credible Mr. Prioleau's testimony that he utilizes the Property as a residence, sleeping there three nights per week, and thus concluded that he occupied it within the meaning of the Act. *Id*. at 6-7.

The trial court then determined that Mr. Prioleau's occupation of the Property was legal because the legislative findings and purpose codified at 68 P.S. § 1102 "demonstrate an intent for the term 'legally occupied' to distinguish properties abandoned by their owners and/or occupied by unauthorized entrants and vagrants, from properties occupied with their owners or with their owners' consent." Trial Court Opinion, 2/20/18, at unnumbered 6. Therefore, because Mr. Prioleau both owned and resided at the Property, he "legally occupied" it for the twelve months preceding the filing of STI's petition. *Id*. at 6-7.

As the trial court's factual findings are supported by the record, we are bound by them. *G & G Inv'rs*, *supra* at 478. Accordingly, we accept that Mr. Prioleau regularly spent nights at the Property, and reject STI's evidence that the Property was vacant. However, we are not bound by the trial court's legal conclusion that such activity established that the Property was "legally occupied" by Mr. Prioleau. Rather, the construction of the language of the Act is a question of law that we consider *de novo*. *Generation Mortg. Co. v. Nguyen*, 138 A.3d 646, 649 (Pa.Super. 2016) ("[T]o the extent that we must interpret a statute to resolve Appellant's issues, our standard of review is *de novo* and our scope of review is plenary.").

- 6 -

The Statutory Construction Act provides that legislative intent controls the construction of statutes. In effectuating the intent of the legislature, the following principles apply.

> (a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

> (b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

1 Pa.C.S. § 1921. "Only if we determine that the statutory text is ambiguous may we look to considerations beyond the text such as the mischief to be remedied by the statute or what gave rise to its enactment." *Whitmoyer v. Workers' Comp. Appeal Bd. (Mountain Country Meats)*, 186 A.3d 947, 954 (Pa. 2018). "[I]n determining whether language is clear and unambiguous, we must assess it in the context of the overall statutory scheme, construing all sections with reference to each other, not simply examining language in isolation." *Id*. "A term is ambiguous if, when it is read in context, it has more than one reasonable interpretation. *Snyder Bros., Inc. v. Pennsylvania Pub. Util. Comm'n*, 198 A.3d 1056, 1073 (Pa. 2018).

The Statutory Construction Act further offers the following guidance in interpreting words and phrases.

> (a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part,

- 7 -

shall be construed according to such peculiar and appropriate meaning or definition.

(b) General words shall be construed to take their meanings and be restricted by preceding particular words.

1 Pa.C.S. § 1903. "Courts also must not interpret a statute in a manner that leads to an absurd result." *C.B. v. J.B.*, 65 A.3d 946, 953 (Pa.Super. 2013).

Our first task is to determine whether the phrase "legally occupied" is ambiguous. As discussed above, the trial court interpreted the phrase to indicate that the property at issue is lived in by an owner or someone who has the owner's permission. *See* Trial Court Opinion, 2/20/18, at unnumbered 5-7. STI agrees that the term "legally occupied" means that "the presence of vagrants or trespassers should not serve to disqualify a conservatorship action, but rather justify it." STI's brief at 14. However, it contends that the limitation of the construction to mean only presence by one with authority is unwarranted by the language.

STI argues that the term "legally occupied" also means that the condition of the property must be such that the law allows it to be occupied by anyone. In other words, STI's interpretation of the phrase would also prohibit a finding of legal occupation if the property at issue has "been designated so unsafe and hazardous that occupation cannot be legal." *Id*. For the following reasons, we agree with STI and hold that the term "legally occupied" is unambiguous and means "occupied in a manner that comports with the law."

The trial court properly cited the definition of "occupy," which is "to live or stay in (a place)." Trial Court Opinion, 2/20/18, at unnumbered 5 (quoting Black's Law Dictionary (10th ed. 2014)). The trial court did not similarly consider the meaning of "legally," which primarily is defined as "[i]n a lawful way; in a manner that accords with the law." Black's Law Dictionary (10th ed. 2014). "Lawful" designates "[n]ot contrary to law; permitted or recognized by law[.]" *Id.* Thus, nothing in the plain meaning of the words suggests that the term "legally occupied" solely references the provisions of property law governing the right to possession rather than indicating occupation that also complies with municipal safety regulations.

However, as noted above, we must not consider the words in isolation, but in the context of the overall statutory scheme. Such an examination confirms that the broader ordinary meaning of "legally" reflects the legislature's intent.

The Act contains a statement of the legislature's findings and the purpose of the Act. The trial court collected some of these statements as follows.

> The Legislative Findings and Purpose section of [the Act] states conservatorship actions are meant to "provide a mechanism to transform abandoned and blighted buildings into productive reuse" as "many citizens of this Commonwealth are adversely affected by abandoned and blighted properties." 68 P.S. § 1102(5)(2). Further, [the Act] focuses on the fact that "substandard, deteriorating and abandoned residential structures are a public safety threat" and if such buildings are not rehabilitated, "they are likely to remain abandoned and further deteriorate." 68 P.S. § 1102(3-4).

Trial Court Opinion, 2/20/18, at unnumbered 6 (cleaned up). Hence, the trial court focused upon the references to abandoned properties, apparently equating "abandoned" with "unoccupied." However, the legislature instead defined the term "abandoned property" for purposes of the Act to mean "[a]ny property that meets the requirements of conditions for conservatorship as provided in [68 P.S. § 1105(d)]." 68 P.S. § 1103. Moreover, the legislature indicated that,

> [i]f the owner of a residential, commercial or industrial building **fails to maintain the property in accordance with applicable municipal codes or standards of public welfare or safety**, it is in the best interest of the Commonwealth, the municipality and the community for the court, pursuant to the provisions of this act, to appoint a conservator to make the necessary improvements before the building deteriorates further and necessitates demolition, resulting in the removal of the building from the housing supply or prohibiting future productive economic use.

68 P.S. § 1102(6) (emphasis added). Thus, both keeping buildings available for housing and ensuring that they are maintained in accordance with applicable codes motivated the legislature's passage of the Act.

To further these purposes, the legislature provided that a conservator may be appointed if all of the following conditions exist at the time the petition is filed:

> (1) The building has not been legally occupied for at least the previous 12 months.
>
> (2) The owner fails to present compelling evidence that he has actively marketed the property during the preceding 60-day

period and made a good faith effort to sell the property at a price which reflects the circumstances and market conditions.

(3) The property is not subject to a pending foreclosure action by an individual or nongovernmental entity.

(4) The current owner fails to present sufficient evidence that he has acquired the property within the preceding six months. . . .

(5) The court finds at least three of the following:

(i) The building or physical structure is a public nuisance.

(ii) The building is in need of substantial rehabilitation and no rehabilitation has taken place during the previous 12 months.

(iii) The building is unfit for human habitation, occupancy or use.

(iv) The condition and vacancy of the building materially increase the risk of fire to the building and to adjacent properties.

(v) The building is subject to unauthorized entry leading to potential health and safety hazards and one of the following applies:

(A) The owner has failed to take reasonable and necessary measures to secure the building.

(B) The municipality has secured the building in order to prevent such hazards after the owner has failed to do so.

(vi) The property is an attractive nuisance to children, including, but not limited to, the presence of abandoned wells, shafts, basements, excavations and unsafe structures.

(vii) The presence of vermin or the accumulation of debris, uncut vegetation or physical deterioration of the structure or grounds has created potential health and safety hazards and the owner has failed to take reasonable and necessary measures to remove the hazards.

(viii) The dilapidated appearance or other condition of the building negatively affects the economic well-being of residents and businesses in close proximity to the building, including decreases in property value and loss of business, and the owner has failed to take reasonable and necessary measures to remedy appearance or the condition.

(ix) The property is an attractive nuisance for illicit purposes, including prostitution, drug use and vagrancy.

68 P.S. § 1105(d).

Under the trial court's interpretation of "legally occupied," the owner of a blighted property that is an unsecured, vermin-infested attractive nuisance, that presents a risk of fire to neighboring properties, and that requires substantial repairs that the owner fails to undertake, may indefinitely elude all possibility of the appointment of a conservator under the Act simply by choosing to occupy the building for some amount of time each year. Such a reading would permit a determined owner to allow his or her building to deteriorate to the point that demolition is necessary. As such, the trial court's construction of "legally occupied" is contrary to the express purpose of the Act. We do not believe that the legislature intended an absurd result.

Based upon our examination of the language of the statute, viewed in the context of the scheme put in place with the Act, we hold that the term "legally occupied" as used in 68 P.S. § 1105(d)(1) unambiguously requires proof that the building in question has not been lived in during the preceding twelve months in conformity with the laws regulating the right to occupancy. This showing may be made with evidence that no person has resided in the

building, that any occupation was in violation of the rights of the property owner (*e.g.*, occupation was by trespassers as opposed to an owner or lessee), or that a statute or code provision prohibits any person from living in the structure legally (*e.g.*, the property has been deemed unfit for habitation and ordered to be evacuated).

Despite our agreement with STI that the trial court incorrectly construed the term "legally occupied," we nonetheless conclude that we need not disturb the order dismissing the petition. STI offered no evidence that Mr. Prioleau's occupation of the Property was illegal.

On appeal, STI argues that no person could lawfully occupy the Property because "[a] property may be designated unsafe, *inter alia*, because of 'inadequate means of egress, inadequate light and ventilation, fire hazard, other dangers to human life or the public welfare, illegal or improper occupancy or inadequate maintenance[.]'" STI's brief at 15 (quoting 34 Pa.Code § 403.84(a)). STI contends that Mr. Prioleau "admitted the municipality issued unsafe violations against the Property" and that "this required the code officer to order the vacating of the building," rendering the Property "incapable of legal occupation." **Id**. (citing 34 Pa.Code § 403.84(b)).

Our review of the transcript reveals no evidence that any building code violations prevented Mr. Prioleau from occupying the Property. The code provision relied upon by STI provides more fully as follows:

(a) A building code official may determine that a building, structure or equipment is unsafe because of inadequate means of

egress, inadequate light and ventilation, fire hazard, other dangers to human life or the public welfare, illegal or improper occupancy or inadequate maintenance. A vacant building or structure that is not secured against entry is unsafe under this section.

(b) When a building code official determines the existence of an unsafe condition, the building code official shall order the vacating of the building or structure.

(c) A building code official shall serve a written notice on the owner or owner's agent of the building, structure or equipment that is unsafe under this section. The notice shall contain the order to vacate the building, structure or seal the equipment out of service and state the unsafe conditions, required repairs or improvements. The order shall be served by certified mail or personal service to the owner or to the owner's agent's last known address or on the owner, agent or person in control of the building, structure or equipment. A building code official shall post the written notice at the entrance of the structure or on the equipment if service cannot be accomplished by certified mail or personal service.

(d) When a building or structure is ordered vacated under this section, the building code official shall post a notice at each entrance stating that the structure is unsafe and its occupancy is prohibited.

34 Pa.Code § 403.84.

STI does not raise an argument in this Court that a building code official determined the Property to be unsafe to the degree that it was ordered that the Property be vacated or that notice that occupancy was prohibited had been posted, let alone identify where in the record such evidence was presented to the trial court. Moreover, from our review of the hearing transcript and exhibits, we find no evidence that an official ordered the Property to be vacated and prohibited occupancy for a code violation, and discern no notice

- 14 -

prohibiting occupancy posted on the entrances to the Property in the photographs offered at the hearing. **See** Exhibits P-1, R-4.

All STI offered was the testimony of Mr. Spak that "[i]f someone was living there it would violate every building code the City has." N.T. Hearing, 12/13/17, at 42. However, Mr. Spak's testimony was based not upon any official determination of uninhabitability, but upon his personal belief that the Property was unsafely "not up to City code" such that "it would be very hard for someone to live there." **Id**. at 42-43. The trial court held that Mr. Spak was not qualified as an expert to offer conclusions about whether joists were compromised, let alone that the property was unsafe to the extent that the building code absolutely necessitated an order to vacate the Property. **See id**. at 47-49. Further, Mr. Prioleau's acknowledgment that he received an inspection violation in mid-August 2017 pertaining to the roof by no means establishes that Mr. Prioleau's occupation of the Property had been illegal for the twelve months preceding STI's filing of its conservatorship petition on August 17, 2017.

Therefore, accepting the trial court's finding that Mr. Prioleau lived at the Property, STI failed to meet its burden of coming forth with evidence to prove that, as of the date of the filing of the petition, "[t]he building has not been legally occupied for at least the previous twelve months." 68 P.S. § 1105(d)(1). Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/29/19