J-S09044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SAINT VLADIMIR UKRAINIAN ORTHODOX CHURCH OF PHILADELPHIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STANLEY J. SAUNDERS | : | No. 774 EDA 2024 |
| Appellant | : | |

Appeal from the Order Entered February 6, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  210300071

BEFORE:   LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 16, 2025**

Stanley J. Saunders appeals from the trial court's February 6, 2024 order denying his post-trial motion filed following the appointment of the Commonwealth Preservation Alliance, Inc. as conservator in this action proceeding under the Abandoned and Blighted Property Conservatorship Act, 68 P.S. §§ 1101-1111 ("Act 135").  For the reasons that follow, we affirm.

By way of background, we note that Appellant is the record owner of a parcel of property located at 500 Independence Street in Philadelphia, Pennsylvania ("the property").  Appellee, Saint Vladimir Ukrainian Orthodox Church of Philadelphia, is a religious entity which maintains a house of worship

_____

[*] Former Justice specially assigned to the Superior Court.

that abuts said property. Since October 30, 2023, the Commonwealth Preservation Alliance, Inc. (hereinafter, "CPA") has served as the court-appointed conservator of the property.

The trial court summarized the relevant facts and procedural history of this case as follows:

> On March 1, 2021, [Appellee] filed its petition for appointment of a conservator pursuant to [Act 135] for [the property].
>
> After reviewing the petition and instructing [Appellee] to serve all necessary parties, the [trial court] scheduled an evidentiary hearing on June 30, 2021. On June 26, 2021, [Appellant] filed a ***praecipe*** to defer pending a Chapter 13 bankruptcy petition filed by [Appellant] in the United States Bankruptcy Court for the Eastern District of Pennsylvania on June 14, 2021. [Appellant's] bankruptcy action was dismissed by order dated April 28, 2022, and [Appellee] filed a motion to relist the Act 135 action on January 20, 2023. The [trial court] granted [Appellee's] motion on April 12, 2023, and scheduled an evidentiary hearing on June 16, 2023 to consider testimony and evidence on the conditions of the property as of the date the petition was filed.
>
> All parties were present and represented by counsel at the June 16, 2023 hearing. By order dated June 16, 2023 and docketed on June 20, 2023, the [trial court] found that [Appellee] established the property abandoned and blighted as defined under 68 P.S. § 1105(d), and scheduled a hearing for August 9, 2023, to determine whether the [trial court] would afford [Appellant] the opportunity to pursue conditional relief of the property pursuant to 68 P.S. § 1105(f). In its order, the [trial court] specified the evidence it sought from [Appellant] to substantiate his ability to remediate the property through conditional relief.

On July 1, 2023, [Appellant] filed a motion for post-trial relief under control no.: 23070101. At the August 9, 2023 hearing, [Appellant] withdrew his motion for post-trial relief by oral motion, requested that the [trial court] afford him the opportunity to pursue conditional relief, but failed to present any evidence to support his request. Following the August 9, 2023 hearing, the [trial court] scheduled another hearing for October 11, 2023 on whether to grant [Appellant's] request to perform conditional relief, and again specified the evidence it sought from [Appellant] in support of his request. At the October 11, 2023 hearing, [Appellant] failed to present the [trial court] with satisfactory evidence of his capacity to remediate the property. Following the October 11[th] hearing, the [trial court] found [Appellee's] nominated conservator, [CPA], qualified to serve as conservator, held the matter under advisement to allow the parties to submit photographic evidence of the current condition of the property, and allow [Appellant] additional time to demonstrate capacity to remediate the property. The [trial court] ordered that "[i]f no documentation has been submitted by [Appellant] by or on Thursday, October 26[th] at 5:00 p.m., [it] may appoint [CPA] as conservator." On October 30[], 2023, having received nothing from [Appellant], the [trial court] appointed [CPA] as conservator of the property.

[Appellant] filed a second motion for post-trial relief on November 10, 2023. The [trial court] requested briefs from each party on whether [Appellant's] motion should be granted, extended the deadlines for briefs at [Appellant's] request by order dated December 19, 2023, held oral argument on February 5, 2024, and denied [Appellant's] motion at the conclusion of oral argument by order entered February 6, 2024.

Trial court opinion, 5/17/24 at 2-4 (footnotes and extraneous capitalization omitted; some brackets in original).

On February 29, 2024, Appellant filed a notice of appeal from the trial court's February 6, 2024 order denying his motion for post-trial relief. On March 7, 2024, the trial court ordered Appellant to file a concise statement of errors complained of on appeal within 21 days, pursuant to Pa.R.A.P. 1925(b).[1] On May 24, 2024, Appellee filed an application to quash Appellant's appeal as taken from a non-appealable interlocutory order. On June 28, 2024, this Court filed a **per curiam** order denying Appellee's application to quash without prejudice as to raise those arguments before the merits panel.

Preliminarily, we find that the instant appeal is properly before us pursuant to Pa.R.A.P. 311(a)(2), which permits an interlocutory appeal as of right from order an affecting the possession or control of property. This Court has recently held that an appeal of an order appointing a conservator or granting conditional relief under Section 1105(f)(1) of Act 135 is properly taken from the order denying post-trial motions, pursuant to Rule 311(a)(2). **Oceanview Prop. Mgmt. & Recovery Servs., LLC v. Baker**, 319 A.3d 508, 511-512 (Pa.Super 2024). The **Oceanview** Court explained that an appeal from the order denying post-trial motions is proper because such an order effectively affirms the trial court's previous order affecting the possession or control of property. **Id.** at 511, n.4. Accordingly, we now turn to the claims raised by Appellant on appeal.

_____

[1] Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

    I.    Whether the record lacks sufficient admissible evidence to sustain the trial court's findings and holding that [Appellee] established that [Appellant's] property has been abandoned for at least twelve months as of [Appellee's] March 1, 2021 filing of its Act 135 petition, when the testimonial and documentary evidence presented by [Appellee] was incompetent, irrelevant, speculative, unauthenticated, largely uncorroborated hearsay and thereby inadmissible and which did not meet either the Section 1105(d)(1) requirements to establish "abandonment" or not being "legally occupied" as defined in **Scioli**[2], and thereby the trial court erred in granting [Appellee's] Act 135 petition predicated thereon[?]

    II.    Whether the record lacks sufficient admissible evidence of record to support the trial court's finding that [Appellee] met it burden of establishing that [Appellant's] property was blighted within the meaning of Section 1105(d)(5)(i), (ii), (iv) and (vii) for the appointment of a conservator and thereby the trial court also committed errors of law in admitting, over the objections of [Appellant], the irrelevant, incompetent, unauthenticated, uncorroborated hearsay and otherwise inadmissible testimonial and documentary evidence presented by [Appellee] and predicated its decision granting [Appellee's] Act 135 petition thereon[?]

Appellant's brief at 4 (extraneous capitalization omitted).

    Our appellate role in cases arising from nonjury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any

_____

[2] **Scioli Turco, Inc. v. Prioleau**, 207 A.3d 346 (Pa.Super. 2019).

- 5 -

application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue ... concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Gamesa Energy USA, LLC v. Ten Penn Ctr. Assocs., L.P.*, 181 A.3d 1188, 1191–1192 (Pa.Super. 2018) (citation omitted; brackets in original), *affirmed*, 217 A.3d 1227 (Pa. 2019).

Upon review, we find that Appellant's claims on appeal warrant no relief. The trial court addressed each of Appellant's allegations of error in its comprehensive, 46-page opinion and concluded that they are without merit. We find that the trial court's conclusions are supported by competent evidence and are free of legal error. Specifically, we agree with the trial court that "the [p]roperty was not legally occupied pursuant to [Section] 1105(d)(1) as the term is defined in [*Scioli*]." *See* trial court opinion, 5/17/24 at 8-13. We also agree with the trial court that Appellee satisfied "at least three of list of nine enumerated conditions" for appointment of a conservatorship under 68 P.S. § 1105(d)(5). *See id.* at 14-20.

- 6 -

Accordingly, we adopt the aforementioned portions of the well-reasoned May 17, 2024 opinion of the Honorable Ann M. Butchart as our own for purposes of this appellate review. We hereby direct the parties to attach the trial court opinion to this Memorandum in all future proceedings.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/16/2025</u>

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | |
|---|---|
| **SAINT VLADIMIR UKRAINIAN ORTHODOX CHURCH OF PHILADELPHIA** <br> *Petitioner,* <br><br> v. <br><br> **STANLEY J. SAUNDERS** <br> *Respondent.* | **SUPERIOR COURT** <br> **774 EDA 2024** <br><br><br> **Trial Court Docket:** <br> **March Term, 2021** <br> **No. 00071** |

OPINION

BUTCHART, J.                                                    May 17, 2024

Stanley J. Saunders ("Respondent"), files this appeal of the Court's Orders dated June 16, August 9, October 11, and October 30, 2023.

Respondent's interlocutory appeal was filed without authorization under the Pennsylvania Rules of Appellate Procedure. Respondent did not appeal a final Order, did not seek permission, and did not file as of Right from Interlocutory Orders pursuant to Pa.R.A.P. 311. The Court respectfully requests that this Honorable Court quash the appeal and remand for further proceedings. *See* Garzone v. Kelly, 539 A.2d 1292 at 1295-96 (Pa. Super 1991).

Further, Respondent has failed to provide the Court with an adequate Statement of Errors Complained of on Appeal as required by Pa.R.A.P. 1925(b).

OPFLD-Saint Vladimir Ukranian Orthodox Church Of Philade



2103000710104

1

## I.  PROCEDURAL HISTORY

On March 1, 2021, Petitioner Saint Vladimir Ukrainian Orthodox Church of Philadelphia ("Petitioner") filed its Petition for the appointment of a Conservator pursuant to the Abandoned and Blighted Property Conservatorship Act at 68 P.S. § 1101 *et seq.* (the "Act" or "Act 135") for the Property owned by Respondent at 500 Independence Street, Philadelphia, Pennsylvania, 19126 (the "Property").

After reviewing the Petition and instructing Petitioner to serve all necessary parties[1], the Court scheduled an evidentiary hearing on June 30, 2021.[2] On June 26, 2021, Respondent filed a *Praecipe* to Defer pending a Chapter 13 bankruptcy petition filed by Respondent in the United States Bankruptcy Court for the Eastern District of Pennsylvania on June 14, 2021. Respondent's bankruptcy action was dismissed by Order dated April 28, 2022[3], and Petitioner filed a Motion to Relist the Act 135 Action on January 20, 2023. The Court Granted Petitioner's Motion on April 12, 2023, and scheduled an evidentiary hearing on June 16, 2023 to consider testimony and evidence on the conditions of the Property as of the date the Petition was filed.[4]

All Parties were present and represented by counsel at the June 16, 2023 hearing.[5] By Order dated June 16, 2023 and docketed on June 20, 2023, the Court found that Petitioner established the Property abandoned and blighted as defined under 68 P.S. § 1105(d), and scheduled a hearing for August 9, 2023, to determine whether the Court would afford Respondent the opportunity to pursue Conditional Relief of the Property pursuant to 68 P.S. §

---

[1] *See* March 26, 2021 Court Order.
[2] *See* April 28, 2021 Court Order.
[3] *See* Petitioner's Motion to Relist Act 135 Action Following Dismissal of Bankruptcy Case
[4] *See* April 12, 2023 Court Order.
[5] Attorney, Robert L Simmons' entry of appearance was recorded on June 16, 2023 at 5:22 p.m.

1105(f).[6] In its Order, the Court specified the evidence it sought from Respondent to substantiate his ability to remediate the Property through Conditional Relief.

On July 1, 2023, Respondent filed a Motion for Post-Trial Relief under Control No.: 23070101. At the August 9, 2023 hearing, Respondent withdrew his Motion for Post-Trial Relief by oral motion, requested that the Court afford him the opportunity to pursue Conditional Relief, but failed to present any evidence to support his request. Following the August 9, 2023 hearing, the Court scheduled another hearing for October 11, 2023 on whether to grant Respondent's request to perform Conditional Relief, and again specified the evidence it sought from Respondent in support of his request.[7] At the October 11, 2023 hearing, Respondent failed to present the Court with satisfactory evidence of his capacity to remediate the Property. Following the October 11 hearing, the Court found Petitioner's nominated Conservator, Commonwealth Preservation Alliance, qualified to serve as Conservator, held the matter under advisement to allow the parties to submit photographic evidence of the current condition of the Property, and allow Respondent additional time to demonstrate capacity to remediate the Property.[8] The Court ordered that "[i]f no documentation has been submitted by Respondent by or on Thursday, October 26th at 5:00 p.m., [it] may appoint Commonwealth Preservation Alliance as Conservator." On October 30th, 2023, having received nothing from Respondent, the Court appointed Commonwealth Preservation Alliance as Conservator of the Property.[9]

Respondent filed a second Motion for Post Trial Relief on November 10, 2023. The Court requested briefs from each party on whether Respondent's Motion should be granted,[10]

---

[6] This provision of Act 135 allows the Court to permit the owner to remedy the blighting conditions of the Property if "the owner represents that the conditions, violations or nuisance or emergency condition will be abated in a reasonable period." 68 P.S. § 1105(f).
[7] *See* August 9, 2023 Court Order.
[8] *See* October 11, 2023 Court Order.
[9] *See* October 30, 2023 Court Order.
[10] *See* November 30, 2023 Court Order.

extended the deadlines for briefs at Respondent's request by Order dated December 19, 2023, held oral argument on February 5, 2024, and denied Respondent's Motion at the conclusion of oral argument by Order entered on February 6, 2024.

On February 29, 2024, Respondent filed with the Court its Notice of Appeal to the Superior Court of Pennsylvania from the order entered in this matter on February 6, 2024. On March 7, 2024, the Court Ordered Respondent to file a concise statement of errors complained of on appeal ("1925(b) statement"). On March 27, 2024, this Court entered an Order to stay the matter pending this appeal and required Respondent post an appeal bond of $10,000 within thirty (30) days of the Order.[11] Respondent filed his 1925(b) Statement on March 29, 2024. *See* Attachment 1, Respondent's 1925(b) Statement.

## II.   DISCUSSION

The Abandoned and Blighted Property Conservatorship Act, 68 P.S. § 1101, *et seq.* ("Act 135"), enacted in 2008, provides a mechanism to transform abandoned and blighted properties into productive reuse. 68 P.S. § 1102. Following an evidentiary hearing on the merits of the Petition, a Court may appoint a conservator to bring the property into municipal code compliance when an owner has failed to do so. Id; *see also* In re Conservatorship Proceeding *in Rem* by Germantown Conservancy, Inc., 995 A.2d 451, 453 (Pa. Commw. Ct. 2010). Alternatively, the Court may also permit the owner to remediate the property by granting Conditional Relief. 68 P.S. § 1105(f).

In enacting Act 135, the Legislature recognized that "[s]ubstandard, deteriorating and abandoned [structures] are a public safety threat" and, if not rehabilitated, are "... likely to

---

[11] *See* March 27, 2024 Court Order.

4

remain abandoned and further deteriorate." 68 P.S. § 1102. Act 135 provides that "[i]f the owner of a [building] fails to maintain the property in accordance with the applicable municipal codes or standards of public welfare or safety, it is in the best interest of the Commonwealth, the municipality and the community *for the court*, pursuant to the provisions of this act, to appoint a conservator to make the necessary improvements[.]" Id. (emphasis added). "Court" is defined under Act 135 as "[t]he appropriate court of common pleas." 68 P.S. § 1103.

1. **Respondent's Statement of Errors Complained of on Appeal fails to identify any issues with sufficient specificity to allow for meaningful review.**

"It is axiomatic that when a court has to guess what issues a defendant is appealing, that is not enough for meaningful review. Similarly, when a defendant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all." Hassel v. Franzi, 2019 PA Super 109, 207 A.3d 939, 949 (2019) *citing* Commonwealth v. Butler, 756 A.2d 55, 57 (Pa.Super. 2000), *affirmed*, 571 Pa. 441, 812 A.2d 631 (2002); Lineberger v. Wyeth, 894 A.2d 141, 148 (Pa.Super. 2006).

In Commonwealth v. Pukowsky, an appellant appealed a trial court ruling that limited the testimony of appellant's witness. Commonwealth v. Pukowsky, 2016 PA Super 201, 147 A.3d 1229, 1236 (2016). The Superior Court held that appellant waived its argument as to this ruling where appellant failed to make specific reference to any testimony of its witness that was improperly limited. Id. Instead, Appellant merely stated in its 1925(b) Statement that "[t]he Court erred in limiting the testimony of Appellant's [witness], as both a fact witness and an

5

expert witness. Id. Said limitations were highly prejudicial to Appellant, and violative of his due process rights." Id. Several objections to the witness' testimony were raised during trial, some of which were sustained, forcing the Court to guess as to which objections formed the basis of the appeal. Id.

In Commonwealth v. Hansley, an appellant waived arguments that it failed to "properly develop" in its 1925(b) statement. Com. v. Hansley, 2011 PA Super 129, 24 A.3d 410, 415 (2011). Appellant's 1925(b) statement argued, variously, that the Court "erred in permitting [Appellee's counsel] to question [Appellant] about things that went beyond the scope of the direct examination," and "in permitting [Appellee's counsel] to constantly make comments questioning the truthfulness of [Appellant's] testimony" without specific reference to the notes of testimony. Id.

Here, Respondent appeals evidentiary rulings made over the course of three hearings. Respondent never references the testimony of any witness, let alone any Respondent's objections which were overruled or any Petitioner's objections which were sustained. Instead, Respondent argues in his 1925(b) Statement that the Court "erred and abused its discretion in summarily overruling Respondent's objections to the hearsay, double hearsay and otherwise impermissible oral testimony and admission of documents," which rulings violate "the Rules of Evidence and law," "Rules of Court, laws of the Commonwealth of Pennsylvania and the equal protection and due process requirements of the Pennsylvania and U.S. Constitutions." Resp't's Rule 1925(b) Statement of Errors Complained of on Appeal at ¶ 3, 4. In an effort to particularize his objections, Respondent provided "particulars" numbered "a" through "h" as subheadings to Respondent's paragraph 4. Id. These "particulars" include statements such as: "allowed Petitioner's attorney to engage in leading and testimonial narratives in presenting questions to witnesses…throughout several hearings from June 16, 2023 through October 30, 2023;"

6

"allowed Petitioner to present…hearsay and otherwise inadmissible testimony and/or documents that were not authenticated and/or corroborated as required under the Rules of Evidence;" "allowed Petitioner…to present grossly prejudicial hearsay and otherwise inadmissible testimony and documents;" "unduly restricted and/or prevented Respondent from cross-examining Petitioner's witnesses;" "denied Respondent's requests for an order directing Petitioner's witnesses to provide Respondent with a copy of the documents in their possession they were testifying to but which they conveniently did not bring to the hearing, yet the court allowed Petitioner's witnesses to testified as to the contents of those hearsay documents…[sic];" and "scheduled and conducted serial status hearings, that were conducted in a manner allowing Petitioner to supplement the June 16, 2023 record…in a manner contrary to the Rules of Evidence, [etc.]." Id.

Had Respondent identified the specific rules, codes, or statutes the Court's rulings violated, the Court would still be left without reference to specific testimony which Respondent argues was improperly allowed, or specific questions on cross-examination that Respondent argues were improperly precluded. The Court is tasked with scrutinizing the notes of testimony from each of the "several hearings from June 16, 2023 through October 30, 2023" to identify which rulings Respondent could be referring to when he argues that his Constitutional rights have been violated by this Court. This is precisely the winnowing which Appellant is required to provide in his 1925(b) statement. Failure to do so is precisely why Superior Court has found similarly undeveloped arguments to be waived.

The Court has endeavored to address the substance of Appellant's 1925(b) Statement. The Court has looked to the arguments made in the February 5, 2024 oral argument on Respondent's Motion for Post Trial Relief. Arguments on this Motion are relevant given that the written content of Respondent's Motion for Post Trial Relief is virtually identical to his 1925(b)

7

Statement. Accordingly, the Court will "reverse engineer" the basis for Respondent's appeal from Respondent's stated bases for objection and/or general complaint during the hearings themselves in order to discern to the specific laws, codes, statutes, legal rights or legal principles that Respondent claims the Court violated.

**2. This Court did not err in finding that the Property was not legally occupied pursuant to 68 P.S. § 1105(d)(1) as the term is defined in Scioli Turco, Inc. v. Prioleau.**

Once the court adjudicating an Act 135 petition is satisfied that service has been perfected upon all Respondents and lienholders, an evidentiary hearing is scheduled on the merits of the petition. Section 5 of the Abandoned and Blighted Property Conservatorship Act requires that the Court find, among other things, that "the building has not been legally occupied for at least the previous twelve months" before it can appoint a Conservator. 68 P.S. § 1105(d)(1).

In Scioli Turco, Inc. v. Prioleau, the Superior Court affirmed the trial court's finding that the petitioner failed to prove that the property had not been legally occupied, but disagreed with the lower court's interpretation of the term "legally occupied." *See* Scioli Turco, Inc. v. Prioleau, 2019 PA Super 98, 207 A.3d 346 (2019). Although the Superior Court declined to disturb the trial court's finding that the respondent regularly spent nights at the Property, it found that "legally occupied" as used in the Act does not mean merely that the property is lived in by its owner or by someone with the owner's permission. Id. at 351. Rather, the Act "unambiguously requires proof that the building in question has not been lived in during the preceding twelve months *in conformity with the laws regulating the right to occupancy* (emphasis added)." Id. at 353. "This showing may be made with evidence that no person has resided in the building...or

8

that a statute or code provision prohibits any person from living in the structure legally." Id.

However, the Superior Court declined to overturn the trial court's finding that the Property had been legally occupied. *See* Id. Though the petitioner in Scioli Turco v. Prioleau argued on appeal that the property could not be legally occupied because the building was designated unsafe, the only support for its argument in the evidentiary record came from the testimony of Ryan Spak, a neighbor "who runs Project Rehab, a nonprofit program that had been monitoring the Property since 2013." Id. at 348. Mr. Spak testified that living in the property would "'violate every building code the City has,'" but Mr. Spak was not qualified as an expert and did not rely upon any official determination of uninhabitability, and Petitioner ultimately presented no evidence that an official had prohibited occupancy because of code violations. Id.

Here, Petitioner presented evidence that the Property was designated an unsafe structure by the Department of Licenses & Inspections. At the June 16 hearing, Petitioner introduced Exhibits 5-017, 5091-094, and 6 through the testimony of code inspector Thomas Rybakowski ("Inspector Rybakowski"). Notes of Testimony, June 16, 2023 ("N.T. I") at 37, 51-52 and 58. Exhibit 5-017 is an Initial Notice of Violation and Order: Unsafe Building assessed on April, 6, 2018, declaring that "This Property has been declared Unsafe by the Department of Licenses and Inspections," explaining that "[a]n unsafe structure is one that is found to be dangerous to the life, health, property or safety...of the occupants of the structure" and identifying the location of the structure as "entire site," specifically "roofing or roofing components...or any portion of the roof framing...with signs of deterioration...incapable of supporting all nominal loads." Pet'r's Ex. 5-017. The Notice informs the property owner that he has "the right to appeal these violations within five (5) days for Unsafe or Imminently Dangerous violations." Id. Exhibit 5-091-094 is a Violation Notice and Order to Correct: Unsafe dated January 15, 2022, which identifies the conditions in violation as the "main roof and soffit collapsing." Pet'r's Ex. 5-091-

9

094. As the April 2018 violation regarding the condition of the roof remained open at the time of the January 2022 violation, the Court found that the condition of the roof described in April 2018 was unchanged as of January 2022. The January 2022 violation remained open at the time of the evidentiary hearing. N.T. at 51. Exhibit 6 includes photographs taken during the January 2022 inspection of the Property.

Inspector Rybakowski testified that "the area of concern [was] the structural members of the soffit return that is part of the main roof assembly[,]" which was "unsafe because the structural members were open to the elements…[t]hey showed signs of wood rot," which condition was depicted in Exhibit 6-001. Id. at 55-56, 59. Though Inspector Rybakowski acknowledged that some repair work had apparently been performed on the roof, "it has not been signed off by a design professional. To the department…the repairs have not been completed." Id. at 66. The Department of Licenses & Inspections "want[s] to make sure that [the roof] is able to support nominal loads. At [the January 2022 inspection, [Respondent] was spoken to and was asked to provide an engineer's report." Id. at 55.

Though no official notice to vacate the premises was posted at the Property, the Pennsylvania Administrative Code states that "[w]hen a building code official determines the existence of an unsafe condition, the building code official shall order the vacating of the building or structure," and that the notice to the property owner "shall contain the order to vacate the building, structure or seal the equipment out of service and state the unsafe conditions." 34 Pa. Code § 403.84(b), (c). It appears from Inspector Rybakowski's testimony that, rather than order Respondent to vacate the building, Respondent was given the opportunity to appeal the initial notice of violation, and then was personally instructed by the onsite code enforcement inspector and Inspector Rybakowski himself on the specific area of the roof that was unsafe and what was needed to comply with the Department of Licenses & Inspections. N.T. I at 55, 60, 64;

10

Pet'r's Ex. 5-017. It is uncontroverted that the Property was deemed unsafe. Per the Pennsylvania Administrative Code, an unsafe building cannot be legally occupied.

Respondent argues that because he "has continually resided in his Property, he met the requirements of occupancy of the Property," and makes note that "there was [nothing] issued by L & I to [Respondent] telling him that he could no longer occupy the premises and to evacuate the premises." Notes of Testimony, February 5, 2024 ("N.T. IV") at 5, 8. Further, Respondent argues that "Petitioner did not offer anything other than this speculation on the part of Mr. Passyn [neighbor] that Mr. Saunders did not occupy the Property." Andrew Passyn, the President of the Board of Stewards of Saint Vladimir's Church ("Passyn"), who works in the Church immediately next door to Respondent, testified that Respondent was not living at the Property, that it was impossible "even [to] get on the Property to access the doors," but that after the Petition was filed, he began seeing Respondent at the Property "periodically; though he was not there all the time…when we had record cold back in December, he was not there for weeks on end." N.T. I at 97-98. Passyn's testimony was rebutted by Respondent's witness, another neighbor "who credibly testified that…she…was seeing [Respondent]…almost every day. There was no testimony whatsoever offered by Petitioner that rebuts or otherwise contradicts that testimony." Id.

Findings of fact made during an evidentiary hearing in an Act 135 matter, including credibility determinations of witnesses made by the lower court, are afforded great deference. In G & G Invs., LLC v. Phillips Simmons Real Est. Holdings, the standard of review was described as follows:

> Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass

11

on the credibility of witnesses; hence we will not substitute our judgment for that of the fact[-]finder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

G & G Invs., LLC v. Phillips Simmons Real Est. Holdings, LLC, 2018 PA Super 80, 183 A.3d 472, 478 (2018) *quoting* Agostinelli v. Edwards, 98 A.3d 695, 704 (Pa.Super. 2014), appeal denied, 631 Pa. 734, 113 A.3d 278 (2015) (internal citations omitted).

Though the record does not disclose any instance in which Respondent was affirmatively instructed to vacate the premises, the Court's finding that the premises was not legally occupied during the twelve months prior to the filing of the Petition is supported by sufficient evidence. The Property was the subject of an active unsafe violation dating back to April 6th, 2018 at the time of filing. N.T. I at 37. An unsafe structure is "one that is found to be dangerous to the life, health, property, or safety of the public or the occupants of the structure by not providing minimum safeguards to protect…occupants…because such [structure] contains[s]…such faulty construction or unsafe foundation that partial or complete collapse is possible." Id. According to the Pennsylvania Administrative Code, a declaration that a structure is unsafe must be accompanied by a notice to vacate. 34 Pa. Code § 403.84(b), (c). Under Pennsylvania law, the structure cannot be legally occupied.

Nevertheless, the Court considered the fact that the Property was never posted with a notice to vacate, or that any notice to vacate that may have been posted was not included in Petitioner's evidence, as well as the testimony of Respondent's witness, Joan Elliott. Ms. Elliott, a neighbor of Respondent's, testified that she often saw Respondent coming and going, that they "talked very often," and that she has "never known him to be a nuisance." N.T. I at 124-125. Elliott also testified that she lives four houses down and across the street from Respondent, and has only observed his Property from the street. Id. at 128.

12

In weighing the credibility of Ms. Elliott's testimony, and whether it is probative of the fact of Respondent's continuous residence in the Property, the Court considered the conflicting testimony of Passyn. Id. at 91. Passyn testified that he knew Respondent did not reside at the Property "by personal observation," that he is there three to four times a week, and that the Church has surveillance cameras. Id. at 98. A few months after the Church filed the Petition, Passyn testified that "[w]e started seeing more and more of Respondent," that "[h]e was there periodically, but not all the time…for example, when we had the record cold back in December, he was not there for weeks on end." Id. Though he frequently observed Respondent at the Property, it was Passyn's belief that Respondent used the Property to store personal property which filled both the interior and exterior of the Property to the point that there were no functioning points of ingress or egress. Id. at 93-94.

During Petitioner's opening statement, counsel for Petitioner argued that "the evidence is going to show that the Property was not a residence…but that [Respondent] has periodically stayed at the Property." N.T. I at 8. The Court found that the weight of the evidence supports this interpretation. Petitioner's exhibits depict a property so congested with debris and scrap material that it is implausible that a person could have traversed through it, let alone habitually resided there, without great difficulty. Further, the condition of the roof of the Property was declared to be unsafe, rendering the Property not legally occupiable as a matter of law according to the Pennsylvania Administrative Code. Elliott testified that she believed that Respondent lived in the Property, but had never been on or inside the Property and that she lived four houses down and across the street. Her testimony that she often saw Respondent outside of the Property does not rebut Passyn's, a nearer neighbor's, testimony that Respondent frequently visited the Property to unload materials on its grounds, but did not continuously reside there. The Court reasonably concluded that Respondent did not occupy the Property, and that Respondent could not legally

13

occupy the Property.

### 3. The Court properly found that Petitioner established the conditions for Conservatorship required by P.S. § 1105(d)(5).

Section 5(d)(5) of the Abandoned and Blighted Property Conservatorship Act requires a finding that Petitioner has established at least three of a list of nine enumerated conditions in order to appoint a Conservator:

(i) The building or physical structure is a public nuisance.

(ii) The building is in need of substantial rehabilitation and no rehabilitation has taken place during the previous 12 months.

(iii) The building is unfit for human habitation, occupancy or use.

(iv) The condition and vacancy of the building materially increase the risk of fire to the building and to adjacent properties.

(v) The building is subject to unauthorized entry leading to potential health and safety hazards and one of the following applies:

(A) The owner has failed to take reasonable and necessary measures to secure the building.

(B) The municipality has secured the building in order to prevent such hazards after the owner has failed to do so.

(vi) The property is an attractive nuisance to children, including, but not limited to, the presence of abandoned wells, shafts, basements, excavations and unsafe structures.

(vii) The presence of vermin or the accumulation of debris, uncut vegetation or physical deterioration of the structure or grounds has created potential health and safety hazards and the owner has failed to take reasonable and necessary measures to remove the hazards.

(viii) The dilapidated appearance or other condition of the building negatively affects the economic well-being of residents and businesses in close proximity to the building, including decreases in property value and loss of business, and the owner has failed to take reasonable and necessary measures to remedy appearance or the condition.

(ix) The property is an attractive nuisance for illicit purposes, including prostitution, drug use and vagrancy.

68 Pa. Stat. Ann. § 1105 (West). The Court found that Petitioner established P.S. § 1105(d)(5)(i), (ii), (iv) and (vii).

Respondent argues that "not a single witness or person was called from the neighborhood, from the community, from the church or any place else to corroborate," and asks "...where's the testimony from any credible source other than Mr. Passyn? No testimony from

14

the – no witnesses, no officials, not even L & I, that – that the Property presented a danger to the public." N.T. IV at 12, 17. Counsel for Respondent "challenge[d] Your Honor and anyone else to say that, when looking at that picture, any pictures presented, that it showed blight." N.T. IV at 14-15. When asked to be more specific about which pictures he referenced, counsel for Respondent stated that "the pictures speak for themselves." Id. Crucial to Respondent's argument are "the natural barriers and the fencing and all of that around the Property" which obstructed "any public view of the Property. And, therefore, how could you say that it's blighted when you can't see it?" Id. at 16.

Findings of fact made during an evidentiary hearing in an Act 135 matter, including credibility determinations of witnesses made by the lower court, are afforded great deference. In G & G Invs., LLC v. Phillips Simmons Real Est. Holdings, the standard of review was described as follows:

> Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the fact[-]finder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

G & G Invs., LLC v. Phillips Simmons Real Est. Holdings, LLC, 2018 PA Super 80, 183 A.3d 472, 478 (2018) *quoting* Agostinelli v. Edwards, 98 A.3d 695, 704 (Pa.Super. 2014), appeal denied, 631 Pa. 734, 113 A.3d 278 (2015) (internal citations omitted).

The Court's findings of blight will be addressed individually.


(i)     *The building or physical structure is a public nuisance.*


15

The statute defines "public nuisance" in section 1103: "[a] property that, because of physical condition or use, has been declared by the appropriate official a public nuisance in accordance with the local housing, building, health, fire or related code, or is determined to be a public nuisance by the court."

At common law, "[a] public nuisance is an unreasonable interference with a right common to the general public; circumstances that constitute a public nuisance are, among other things, conduct that is proscribed by statute or ordinance, or conduct that interferes with public peace." Commonwealth v. Ebaugh, 783 A.2d 846, 850 (Pa. Commw. Ct. 2001); Muehlieb v. City of Philadelphia, 574 A.2d 1208 (Pa. Commw. Ct. 1990).

The Court reasonably found that the Property was a public nuisance under both the statutory and common law definitions. The main structure on the building was declared unsafe in 2018 by the Department of Licenses & Inspections. N.T. I at 37, 51-52 and 58; Ex. 5-039. A rear structure on the Property was declared imminently dangerous, and was ultimately demolished in 2021 by the City of Philadelphia after it began to slide onto a neighbor's property. Id. at 41-43. Prior to the City's undertaking the demolition of the rear structure, Respondent signed a Final Order and Injunction to Comply Violations which stipulated that he would repair the garage structure, and that "the subject premises is a nuisance per se and presents a hazard to the safety, health, and welfare of the neighbors, and the public in general." Ex. 5-19-020. Appropriate officials made these findings, as well as others related to the debris on the Property, that satisfy the definition of public nuisance supplied by Act 135.

Contrary to Respondent's argument that "no officials, not even L & I [testified] that the Property presented a danger to the public," Inspector Rybakowski testified that "[t]here [were] open junction boxes, open outlets, exposed wire…a heavy fire load in the interior of the

16

Property...combustible materials, [and] propane tanks" when the Property was inspected in 2022. N.T. IV at 12, 17; N.T. I at 20. In order to address these concerns, "the CLIP (Community Life Improve Project) has gone to the Property several times...through court order...and removed the debris." Id. 31.

The City of Philadelphia undertook demolition of the imminently dangerous rear garage structure, declared the main structure unsafe because of its defective roof, and cleared dangerous flammable materials from the interior and exterior of the Property. Given this official action, and Passyn's testimony of his attempts to persuade Respondent to clear the materials from the Property and that Respondent erected an illegal fence covered with a blue tarp in order to conceal the three to six foot high accumulations of scrap and combustible materials from neighbors' view, (N.T. I at 94), the Court reasonably found that the Property poses a public nuisance.

*(ii)     The building is in need of substantial rehabilitation and no rehabilitation took place in twelve months prior to the filing of the petition.*

"Substantial rehabilitation" is defined in the act as "repairs, replacements and improvements" that exceed "15% of the property's value after completion of all repairs," or where "more than one major building component is being replaced," which includes "roof structures" and "wall or floor structures." P.S. § 1103.

The main physical structure on the Property was declared unsafe by the Department of Licenses & Inspections. N.T. I at 51. The detached garage structure was declared imminently dangerous on March 9, 2021, eight days after the Petition was filed. Ex. 5-039. The conditions of the garage structure existed since at least August 2019 when the City of Philadelphia brought a complaint against Respondent, resulting in an Injunction to Comply Violations with which

17

Respondent failed to comply. Ex. 5-019. Ultimately, the City demolished the structure. N.T. I at 43-44.

Inspector Rybakowski testified to Exhibit 6-018, "a photograph taken of the interior of the Property showing that there is a section of the plaster work that has fallen or is dislodged from the interior section" which indicates "a lack of maintenance and that there is an issue with the interior structure." Ex. 6-018; N.T. I at 28-29. Though Inspector Rybakowski acknowledged that "some repair work…was done to the structural members" between the initial unsafe violation in April 2018 and the January 2022 follow-up inspection to which Inspector Rybakowski referred in his testimony, Respondent offered no evidence about when this work was done or its substance. Id. at 55. Inspector Rybakowski's concerns about the structure remained, as "there was no permit pulled for the repair of that assembly" and no assurance "that the work was done adequately."

Further, at the time the Petition was filed, the detached garage structure was in a condition that eight days later would be declared imminently dangerous, "had already collapsed…into the neighbor's yard," and which Respondent had agreed to demolish 13 months prior. Id. at 42-43.

Both the main and detached structures at the Property were in need of substantial rehabilitation. The Department of Licenses & Inspections designated them unsafe and imminently dangerous, respectively. Though Respondent performed some rehabilitation to the roof of the main structure, the detached garage structure was left to the city to demolish, and nothing in the record indicated when the roofing work took place, or whether it remediated the unsafe conditions.

     *(iii)    The condition of the building materially increased the risk of fire to the building*

18

*and adjacent buildings.*

Inspector Rybakowski testified that "[t]he interior of the Property had a large amount of combustibles," that there "were open junction boxes, open outlets, exposed wire," and there "was a heavy fire load in the interior of the Property." N.T. I at 20. In Exhibit 6-022, he identified a propane tank and various chemicals. Id. at 25. Finally, Inspector Rybakowski identified four open violations assessed against the Property, one for "combustibles," which he describes as "a large assemblage of material belongings, which are all fire hazards. They all have an individual combustible or flame points, but the assemblance of those materials are combustibles. There is also propane tanks that were specifically pictured that is a source of concern." N.T. I at 74-75. Passyn testified that he observed a fire at the Property in 2020, and Petitioner introduced a Report of Fire Alarm from June 17, 2020 stating that the fire department found the cause of alarm to be "rubbish in the rear of the Property." N.T. I at 104-105; Ex. 9.

Given the testimony about previous fires at the Property, and the accumulation of flammable materials which the Department of Licenses & Inspections identified as a hazard warranting a violation notice, the Court reasonably found that the Property materially increases the risk of fire.

(iv)    *The presence of vermin or accumulated debris has created potential health and safety hazards and the owner has failed to take reasonable and necessary measures to remove the hazards.*

Petitioner provided ample testimony regarding accumulation of debris on the Property, corroborated by photographs and evidence of L & I violations citing the accumulation of debris.

19

Inspector Rybakowski testified "Exhibit 6-011 shows...a large amount of material and belongings and accumulation of debris, trash, and other effects in the rear yard of the Property" and that CLIP (Community Life Improvement Project) "has gone to the Property several times...to remove the debris," indicating not just the presence of debris, but a determination made by the City of Philadelphia that the debris posed a danger that required abatement. N.T. I at 25, 31. The Department of Licenses & Inspections issued a number of violations against the Property for "trash." Id. at 47; Ex. 5-009; Ex. 5-004; Ex. 5-026; Ex. 5-037. Passyn testified that church events "have been interfered with because there's so much debris and open containers and stagnant water that it breeds mosquitoes." N.T. I at 95. Passyn also testified that he addressed his concerns with Respondent numerous times, but that Respondent either failed to remove it, or his efforts to address the issue were undone by additional material. N.T. I at 93-95.

The Court reasonably found that the accumulation of debris on the Property poses a safety hazard, and Respondent had not taken the necessary measures to remove the hazard.

**4. The Court did not abuse its discretion in overruling any of Respondent's objections to the evidence offered and/or testimony solicited by Petitioner during any of the relevant hearings.**

Respondent's 1925(b) statement presents a general argument encompassing each and every adverse evidentiary ruling made over the course of three hearings. Resp't's Rule 1925(b) Statement of Errors Complained of on Appeal at ¶ 3, 4. Though Respondent fails to cite to any specific rulings that it believes were in error, Respondent's objections which were overruled by the Court will be grouped as logically as possible.

Some similarly themed arguments proffered in Respondent's 1925(b) Statement can be summarized to say: "The Court abused its discretion in overruling Respondent's objections to

20

Petitioner's evidence and Petitioner's witnesses' testimony, and therefore based its finding that the Property is blighted and abandoned on a tainted evidentiary record." At oral argument on Respondent's Motion for Post-Trial Relief, counsel for Respondent stated that "the testimony presented by Petitioner was confined solely to that of Mr. Passyn. Yet...Mr. Passyn gave...hearsay testimony...that parishioners and others complained." N.T. IV at 12. He noted his belief that, because "the challenges to even the presentation of such evidence (regarding the condition of the Property) by Respondent were overruled by the Court...that...the Court may have been inadvertently led down a primrose path based solely on conjecture, embellished testimony – and that being the hearsay testimony included – concerning any condition of the Property." Id. at 14. Finally, counsel for Respondent claimed that "[f]or the most part, almost none of the pictures or photographs offered by Petitioner have a date on them. We don't know when. We do know that there were some dates that date back to 2010, 2015, 2017, 2018. They're totally irrelevant." Id. at 15-16.

The lower court's evidentiary rulings will not be disturbed unless the court is found to have abused its discretion. Tillery v. Children's Hosp. of Philadelphia, 156 A.3d 1233, 1234 (2017). A trial court abuses its discretion where it misapplies the law in such a way that is manifestly unreasonable or exercises its judgment because of bias, prejudice, ill will or partiality as shown by the evidence in the record. Com. v. Melvin, 103 A.3d 1, 35 (2014).

Respondent's objections occurred during the testimony of two witnesses: Inspector Rybakowski, and Passyn. Respondent objected to testimony on several bases which will be discussed one at a time.

      i.     *Respondent's hearsay objections*

21

Hearsay is an out of court statement offered for the truth of the matter asserted in the statement. Com. v. Begley, 780 A.2d 605, 623 (2001). Hearsay is inadmissible because such a statement is presumed to be unreliable since the declarant cannot testify to its accuracy. Id. Factual findings cannot be based exclusively on hearsay evidence. Walker v. Unemployment Compensation Board of Review, 367 A.2d 366 (Pa.Cmwlth. 1976).

Inspector Rybakowski testified that he inspected the Property in January 2022, noting that "the [Code Enforcement Inspector] had already been into the basement area and had documented the conditions of the Property." N.T. I at 27. Inspector Rybakowski described how he conducted the inspection. Counsel for Respondent stated that: "I'm going to object to that testimony and move to strike it on the basis of hearsay because he's basing his opinion on information from third parties." Id. Inspector Rybakowski testified that the Code Enforcement Inspector had previously been to the basement of the Property, and Inspector Rybakowski's own inspection focused on the roof. Id. The witness did not repeat a statement made out of court. He testified to his own knowledge of why he was at the Property: to inspect the roof. No hearsay evidence was offered, and Respondent's objection was properly overruled.

During Passyn's testimony, he testified that new parishioners express fear because the Property "looks dangerous and dilapidated." Id. at 96. Respondent objected, and the Court allowed Petitioner to pursue the topic before deciding whether the testimony should be stricken. Passyn was then asked whether the church ever submitted complaints regarding the condition of the Property, to which he answered that it had not, but that the Board of Stewards approved the filing of the Act 135 Petition. Id. at 96-97. Petitioner's direct examination of Passyn did not further explore the experiences of parishioners beyond the fact that the Board approved filing the Petition on behalf of the church, which presumably represents the interests of its parishioners. Though Passyn's specific statement regarding parishioners' feelings was not affirmatively

22

stricken, the Court sustained Respondent's next objection to a question about whether Passyn received complaints from anybody other than parishioners about the condition of the subject Property. Id. at 101.

The Court did not permit Passyn to testify about the opinions of individuals other than himself. The testimony following Respondent's initial objection merely elicited the fact that the Board approved filing the Petition on behalf of the church. Petitioner was afforded the opportunity to develop the basis for Passyn's testimony about parishioners' feelings, but chose not to. Rather than affirmatively strike the prior testimony, the Court properly sustained Respondent's next hearsay objection. The Court did not consider the feelings of other parishioners as relayed by Passyn, as evidenced by its decision to sustain Respondent's hearsay objection.

Though Respondent argues frequently and forcefully that Passyn's testimony is comprised nearly entirely of hearsay testimony, the record demonstrates that Respondent's objection is without merit. Respondent made only two objections to Passyn's testimony during Petitioner's direct examination. After allowing the testimony, the Court sustained Respondent's second hearsay objections. The Court did not abuse its discretion in affording Petitioner this opportunity, nor in declining to affirmatively strike Passyn's statement about the feelings of parishioners.

ii.     *Respondent's relevance objections*

Only relevant evidence is admissible. Commonwealth v. Yale, 249 A.3d 1001, 1022 (2021) ("The threshold inquiry with admission of evidence is whether the evidence is relevant.") Relevant evidence has any tendency to make a fact more or less probable than it would be

23

without the evidence. Id. Relevant evidence is not admissible where, among other things, its probative value is substantially outweighed by a danger of unfair prejudice. Lykes v. Yates, 77 A.3d 27, 33 (2013). "Unfair prejudice" refers to any evidence that prompts the factfinder to make a decision on an improper basis by making it difficult for the jury to weigh all the evidence impartially. Id.

For purposes of Act 135, the filing date is the relevant, fixed point from which the court assesses the Property's candidacy for conservatorship. ("...the court may appoint a conservator if all of the following apply as of the date of filing:..." P.S. § 1105(d)). Throughout the testimony of Inspector Rybakowski and Passyn, Respondent objected to the introduction of evidence of the condition of the Property that predates "the relevant statutory period." Respondent argues that Petitioner was permitted to introduce evidence irrelevant to the condition of the Property at the time the Petition was filed. "Under the guise of presenting a history dating back to 2010," Petitioner presented evidence of the poor condition of the Property irrelevant to the condition of the Property at the time of filing, and prejudicial to Respondent. Resp't's Rule 1925(b) Statement of Errors Complained of on Appeal at ¶ 4(c). Respondent further claims that "the outer limits" of the time period described as "at the time of filing" is "the previous twelve months." Id.

A plain reading of the statute does not support Respondent's claim that only evidence of the condition of the Property dated from within twelve months of the filing date is relevant. It is true that the greatest time period referred to at any point in P.S. § 1105(d) is the twelve month period during which Petitioner must prove the property was not legally occupied, but nowhere in the statute is it indicated that this twelve months is the limit beyond which evidence of the condition of the property becomes irrelevant.

Even if the Court were to adopt Respondent's interpretation of P.S. § 1105(d), there is no reason to categorically declare all evidence of the Property in the twelve months predating the

24

filing of the Petition irrelevant to evidence of the condition of the Property, especially where evidence has been introduced that the condition of the Property has been largely unchanged. Evidence of the condition of the Property as it existed thirteen months before the date of filing is probative of the condition of the Property twelve months before the date of filing.

Respondent expressed this objection throughout Inspector Rybakowski's testimony, first to photographs of the Property taken in February of 2022. N.T. I at 22. Counsel for Petitioner asked Inspector Rybakowski whether he was "aware of court orders that have been entered regarding the conditions of the subject Property." Id. at 32. Respondent's objection on relevance grounds was overruled. Id. Inspector Rybakowski testified regarding an order entered in May of 2017 authorizing the City of Philadelphia to remove debris from the exterior of the subject premises in order to abate violations assessed against the Property by the Department of Licenses & Inspections.,[12] and testified that violation notices requiring Respondent to remove debris from his Property date back to 2015. Id. at 33, 50. Inspector Rybakowski then testified regarding the initial notice of the unsafe structure violation assessed against the Property in April of 2018. Id. Respondent objected to testimony regarding the detached garage structure, which was the subject of a complaint by the City of Philadelphia dating back to August of 2019. Id. at 46; Ex. 5-019.

The detached garage structure was found in need of remediation in August of 2019. Ex. 5-019. It was not remediated until March of 2021, shortly after the Petition was filed, when the City of Philadelphia demolished the garage. N.T. I at 43-44. Though Petitioner failed to introduce evidence of the condition of the garage that is contemporaneous with the time the Petition was filed, the complaint filed by the City in 2019 and the injunction order signed by Respondent requiring that he remediate the structure in 2020 is relevant to the condition of the

---

[12] Respondent's subsequent objection to a letter authority by CLIP (Community Life Improvement Project) describing its efforts to abate the Property was sustained on hearsay grounds. N.T. I at 34-35

25

structure at the time of filing because no remediation took place until after the Petition was filed.

The history of violations for the accumulation of debris on the Property is relevant to the condition of the Property at the time of filing because, as Inspector Rybakowski testified, Respondent never took actions to adequately remedy the violations. N.T. I at 51. Though Passyn testified that the amount of debris on the Property fluctuated, the fact that the City of Philadelphia had to enter the Property to remove debris by court order, and had to do so more than once, is probative of the fact that the issue of debris on the Property was persistent and intrusive. Id. at 93-94. Further, Respondent's failure to cooperate with the City of Philadelphia, both in removing debris and complying with the imminently dangerous and unsafe structure violations assessed against the Property, is probative of his capacity to undertake conditional relief pursuant to 1105(f).[13] Respondent's objections are without merit, and the Court did not abuse its discretion in allowing this evidence.

> iii. *Respondent's objections to the form of Petitioner's questions as leading and as beyond the scope of cross-examination*

> a. *Leading questions*

It is within the court's discretion to exclude questions that are leading during a direct examination. Com. v. Reidenbaugh, 422 A.2d 1126, 1131 (1980). Leading questions are those that are framed to suggest the desired answer to the witness. Id.

"The trial judge has wide discretion in controlling the use of leading questions. The

---

[13] Despite the substantial evidence introduced by Petitioner documenting Respondent's refusal and/or inability to cooperate in remedying the violations assessed against the property, Respondent was afforded three distinct opportunities to demonstrate his capacity to remediate the property himself. *See* June 16, 2023 Court Order; August 9, 2023 Court Order; October 11, 2023 Court Order.

26

court's tolerance or intolerance for leading questions will not be reversed on appeal absent an abuse of discretion." Com. v. Fransen, 2012 PA Super 57, 42 A.3d 1100, 1116 (2012) *quoting* Com. v. Lambert, 765 A.2d 306, 360 (Pa.Super.2000).

During Inspector Rybakowski's testimony, counsel for Petitioner directed his attention to the initial notice of the unsafe structure violation assessed against the Property, and asked if he had personally observed "conditions at the subject Property that are characterized as damaged, decayed, dilapidated, structurally unsafe, or of such faulty construction or unstable foundation that partial or complete collapse is possible?" N.T. I at 38. In doing so, counsel for Petitioner quoted from the definition of unsafe structure given in the notice and previously read into the record, and asked Inspector Rybakowski whether, during his inspections of the Property, he observed the conditions giving rise to the unsafe structure violation. Respondent objected to the repetition of the definition of "unsafe structure" in the question posed to Inspector Rybakowski. The question posed by counsel for Petitioner does not impermissibly suggest to Inspector Rybakowski that the Property is unsafe where it merely incorporates the definition of "unsafe" provided by the exhibit. Further, Inspector Rybakowski offered substantial testimony about the condition of the Property without the aid of the unsafe structure violation informing him as to which conditions Petitioner asled him to describe. Respondent's objection is without basis.

On redirect examination of Inspector Rybakowski, counsel for Petitioner asked if he observed any change in the condition of the Property since February 2022. Id. at 80-81. He answered that the condition has not changed and stated that "[t]here was still a large accumulation of material in the rear of the Property." Id. at 81. Counsel for Petitioner asked: "Similar to what's depicted in Petitioner's Exhibit 6-002?" Id. Respondent objected to this question. Id. The witness was asked to observe a photograph, described the condition of the Property as unchanged from what is depicted in the photograph, then was asked to confirm his

27

answer by specific reference to the photograph. The conclusion that the Property's condition was similar to the conditions depicted in Exhibit 6-002 was not suggested to the witness by the question, but by the Exhibit itself. The question confirming that Exhibit 6-002 accurately represents the condition of the Property as most recently observed by the witness merely restated the answer the witness already provided. Respondent's objection is without basis.

During direct examination of Passyn, counsel for Petitioner asked the witness: "…how long has the subject Property included an accumulation of trash, debris, and flammable material as depicted in Exhibit 2 and the pictures that were discussed earlier today by Inspector Rybakowski." Id. at 92-93. Respondent stated: "I object to the form of the question, 'flammable this and flammable that.'" Id. at 93. Though Respondent's objection was overruled, counsel for Petitioner restated the question, and asked: "How long has the subject Property had an accumulation of material as depicted in Exhibit 2." Id. Passyn ultimately did not suggest that any of the material was flammable at any point during his testimony, except to say that he observed fire at the Property in June of 2020, and referred to Exhibit 16, a copy of the report of fire alarm from June 2020 where the fire department entered Respondent's Property. Id. at 104-105.

During direct examination of Passyn at the August 9, 2023 hearing, Respondent objected to a question from counsel for Petitioner which alerted the witness to the date of the prior hearing in order to ask him whether work on the Property had been performed since that time. Notes of Testimony, August 9, 2023 ("N.T. II") at 41. The Court did not abuse its discretion in allowing Petitioner to remind the witness of the time period relevant to his testimony by reference to a court date. The phrasing of this question allowed the witness to focus on the work performed on the Property since the last hearing, and prevented redundant and cumulative testimony about any prior period.

Respondent's objections are without merit, and the Court did not abuse its discretion in

28

overruling them.

b. *Questions beyond the scope of cross-examination*

"The scope of redirect examination is largely within the discretion of the trial court. Moreover, when a party raises an issue on cross-examination, it will be no abuse of discretion for the court to permit re-direct on that issue in order to dispel any unfair inferences." Com. v. Dreibelbis, 493 Pa. 466, 479, 426 A.2d 1111, 1117 (1981) *citing* Com. v. Stokes, 475 Pa. 312, 380 A.2d 370 (1977).

On cross examination of Inspector Rybakowski, counsel for Respondent asked the witness whether he was aware that Respondent had put dumpsters on the Property and asked whether he knew if Respondent had thrown some of the material on the Property in the dumpsters. N.T. I at 66-68. On redirect examination, counsel for Petitioner asked the witness to look at Exhibit 6-002, a picture of the Property, and asked him whether he observed any significant change in the condition of the Property from that depicted in the picture. Counsel for Respondent stated his objection, reasoning that the "question is going beyond the scope of cross-examination. Those were questions that – I did not address any of those, and he's now trying to engage in direct again." Id. at 80.

Though Respondent did not ask about Exhibit 6-002 on cross examination, the witness was asked about his knowledge of Respondent's efforts to remove debris from the Property. Inspector Rybakowski's testimony about any observable change in condition of the Property during the time in which Respondent used the dumpsters to remove debris, as suggested on cross examination, is firmly within the proper scope of redirect examination. Respondent's objection is without merit, and the Court did not abuse its discretion in permitting the question.

29

iv.    *Respondent's objection to impermissible lay testimony*

Respondent argues that the Court abused its discretion in allowing "witnesses for Petitioner, over the continuing objections of Respondent, to testify to matter [sic] which they were neither shown to be qualified as an expert nor possessed the requisite knowledge, skills and/or credentials, under the Rules of Evidence, to render an opinion as to matters/issues requiring specialized knowledge, skills, education and/or training such as the structural integrity of the Respondent's house and/or its components, the risk factors and proper assessment of the accumulation and storage of various materials in and on the Property viz-a-viz established fire, health and safety issues generally and under either the Philadelphia Housing Code or Section 5 of Act 135. [sic]" Resp't's Rule 1925(b) Statement of Errors Complained of on Appeal at ¶ 4(d).

Respondent appears to argue that Petitioner was permitted to introduce impermissible lay testimony through Inspector Rybakowski and/or Passyn.

"If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is…not based on scientific, technical, or other specialized knowledge." Pa.R.E. 701

Inspector Rybakowski is a construction compliance supervisor assigned to the Contractual Services Unit of the Department of Licenses & Inspections for emergency response, a unit "delegated the task of inspecting properties that are either declared unsafe or imminently dangerous in the city…" N.T. I at 18. Inspector Rybakowski is qualified to testify to the findings of the Department of Licenses & Inspections as a custodian of its records, and is qualified to testify to his personal observations regarding the structural integrity of the properties that he has inspected, as such observations are well within his expertise. At no point during the June 16, 2023 evidentiary hearing did Respondent question Inspector Rybakowski's qualifications to

30

assess the structural conditions of the properties he inspects as an employee of the City of Philadelphia.

On cross examination of Passyn, Respondent elicited that he worked twenty years in the construction trade. Counsel for Respondent challenged him to "describe in detail, then, the clear and present danger that the roof of the structure presented." Id. at 112. Passyn testified to his opinion about the hazards created by the Property. Respondent failed to object to Passyn's lay opinions about the structural integrity of the Property or the assessment of the danger of the accumulated materials on the Property. Id. at 112-114. In fact, he affirmatively elicited them. Respondent's objections are without merit.

### 5. The Court did not unduly restrict Respondent from cross-examining Petitioner's witnesses or examining his own witnesses.

Respondent's 1925(b) statement presents a general argument encompassing each and every adverse evidentiary ruling made over the course of multiple hearings. Resp't's Rule 1925(b) Statement of Errors Complained of on Appeal at ¶ 3, 4. Though Respondent fails to cite to any specific rulings that it believes were in error, Respondent's objections which were overruled by the Court will be grouped as logically as possible.

Some similarly themed arguments proffered in Respondent's 1925(b) Statement can be summarized to say: "The Court abused its discretion in sustaining any of Petitioner's objections during Respondent's cross-examination of any of Petitioner's witnesses, or during direct examination of any of Respondent's witnesses, and therefore based its finding that the Property is blighted and abandoned on a tainted evidentiary record." Counsel did not raise these arguments during oral argument on Respondent's Motion for Post-Trial Relief, but did state during the October 11th, 2023 hearing that "he can't stress enough how [Respondent] has been

31

curtailed in trying to address these issues...especially, by way of cross-examination and challenging the testimony that Petitioners [sic] have put forth in this matter." Notes of Testimony, October 11, 2023 ("N.T. III") at 38-39. Counsel for Respondent further stated that he was "at a loss as to what questions [he] can ask" on the direct examination of his client. Id. at 66.

A court's evidentiary rulings will not be disturbed on appeal unless the court is found to have abused its discretion. Tillery v. Children's Hosp. of Philadelphia, 156 A.3d 1233, 1234 (2017). A trial court abuses its discretion where it misapplies the law in such a way that is manifestly unreasonable or exercises its judgment because of bias, prejudice, ill will or partiality as shown by the evidence in the record. Com. v. Melvin, 103 A.3d 1, 35 (2014).

### i. *Unavailable documents*

The apparent thrust of Respondent's argument is that the Court refused to sustain his requests that Petitioner's witnesses produce certain documents that counsel for Respondent alleged were intentionally omitted from evidence.

A party seeking production from a person not a party to the action must comply with Pennsylvania Rule of Civil Procedure No. 4009.21. This Rule requires written notice to each party of the intent serve a subpoena at least twenty days before the date of service to allow for objections which are themselves to be filed in writing. Pa.R.C.P. No. 4009.21.

At the June 16, 2023 evidentiary hearing, during cross examination of Inspector Rybakowski, counsel for Respondent asked whether he knew the identities of the persons who complained to the Department of Licenses & Inspections about the Property, then asked why the witness had produced no record of such in anticipation of trial. N.T. I at 71-72. During cross

examination of Passyn, counsel for Respondent asked whether he brough the minutes of the church meeting authorizing the filing of the Petition. N.T. I at 111. At the October 11, 2023 hearing, during cross examination of Stephen Arrivello ("Arrivello"), Executive Director of the Commonwealth Preservation Alliance, Petitioner's proposed Conservator, counsel for Respondent sought to ask the witness about the preliminary plan for remediation that was proposed to the Court at a previous hearing. When the Court sustained Petitioner's objection to the question "on the basis…that it was already submitted (at a prior hearing, without objection) and there was no problem with it," then asked counsel for Respondent to confine his cross examination to the testimony that was given on direct during this hearing, he responded that he "intend[s] to [cross examine] according to the rules of court and the rules of court say that I may very well cross examine him in regard to any pertinent issue in this case that he is aware of and he's aware of the finances surrounding the Property – especially since he had to go out multiple times, you would think that one could go out and do an observation and come back and do a preliminary report, but he said he's been out there several times, and I find it disturbing, to some extent, Your Honor, that you seem to curtail respondent always when it comes to digging into the information that they – Petitioner want[s] to present. When we want to dig into it, you can tell us and say, 'no,' you can't do it. My question is: 'what are they hiding?'" N.T. III at 31.

Counsel for Respondent did not question Petitioner's witnesses about the actual documents which were the subject of the hearings in this matter. He instead attempted to make discovery requests of Petitioner through its witnesses. The issue was best illustrated during the cross examination of Inspector Rybakowski, where counsel for Respondent asked the witness to provide Respondent "with a copy of the calls that [L & I] acted on in regard to the violations" which could identify individuals who made complaints to the Department of Licenses & Inspections about the Property, and all pictures that he took of the Property during his January

33

inspection.[14] N.T. I at 85-86. Counsel for Respondent opined that "in my estimation, [the witness] has purposely avoided bringing pertinent documents to this hearing." Id. at 85.

Respondent alleges that the Court abused its discretion it denying Respondent's "requests for an order directing Petitioner's witnesses to provide Respondent with a copy of the documents in their possession they were testifying to but which they conveniently did not bring to the hearing, yet the Court allowed Petitioner's witnesses to testified [sic] as to the contents of those hearsay documents." Resp't's Rule 1925(b) Statement of Errors Complained of on Appeal at ¶ 4(f).

All of Respondent's requests sound in discovery. A request that a custodian from the Department of Licenses & Inspections provide copies of the complaints they have received about a certain property are properly directed to the City of Philadelphia, properly filed in writing in the form of a subpoena, and properly noticed to Petitioner twenty days before the filing. Pa.R.C.P. No. 4009.21. A demand that the Court order a subpoenaed, unrepresented witness to retrieve documents which are not the subject of a formal discovery request clearly delineating the boundaries of the request, while the Court breaks for lunch, is not supported by rules of evidence or civil procedure, nor any norm of judicial practice. The Court did not abuse its discretion in declining to issue such an order. *see* N.T. I at 84 ("[counsel for Respondent]: Your Honor, I would ask for a ruling from the Court that [Inspector Rybakowski] take that time, while we're on lunch break, to provide Respondent with a copy of the calls that they acted on in regard to the violations since it's part of the database as well as a copy of the subpoena that he received to attend this proceeding.")

---

[14] Petitioner represented that those pictures were contained in Exhibit 6, but counsel for Respondent claimed "No, they are not. The pictures that I made inquiry of are the pictures of the unsafe conditions that he took pictures of. He said they're not in the book...The ones in the book [were] taken by a contractor person." N.T. I at 86. What Inspector Rybakowski actually testified was that, because he did not compile Petitioner's evidence binder, that he did not know from memory which page numbers in Exhibit 6 those pictures were on. Id. at 57-59.

34

Respondent also requested that the records of violation notices assessed by the Department of Licenses & Inspections be stricken from the record because Inspector Rybakowski "can't identify who made the calls that prompted those inspections." N.T. I at 88. Though Respondent provided no basis for this request, the Court notes that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part...that in fairness ought to be considered at the same time." Pa.R.E. 106. "The purpose of Pa.R.E. 106 is to give the adverse party an opportunity to correct a misleading impression that may be created by the use of a part of a writing or recorded statement that may be taken out of context." Id. The absence of the identity of individuals who complained to the Department of Licenses & Inspections does not tend to mislead the factfinder as to the conditions giving rise to the assessed violations, and the identities of the individuals are plainly irrelevant to whether the conditions found by the inspectors actually existed. Further, it is not clear from the record that Inspector Rybakowski ever acknowledged that such records exist, which records belonging to the Department of Licenses & Inspections, if any, actually would contain the identities of complaining individuals, or whether those identities would, in the normal course of business, be included in the records of the violation notices provided by the Department of Licenses & Inspections to Petitioner.

Respondent's remaining requests for information from Petitioner's witnesses were too inchoate to form the basis of an order, let alone a discovery request or motion to compel discovery. The Court declines to address them except to say that Respondent's failure to develop his vague argument about what "they are hiding" renders the Court unable to demand that Petitioner produce the allegedly missing documents, unable to meaningfully review its decision not to issue such an order, and ultimately unable to understand how Respondent wished to make his case or how the Court's ruling restricted him from doing so.

35

ii.    *Questions beyond the scope of direct examination*

Cross-examination must be limited to the subject matter of the direct examination. Pa. R.E. 611(b). The scope of cross-examination is a matter within the discretion of the trial court. Com. v. Largaespada, 184 A.3d 1002, 1009 (Pa. Super. 2018).

On cross examination of Passyn during the June 16, 2023 hearing, counsel for Respondent asked, given how often he seems to spend observing Respondent on his Property, when he finds "time to perform [his] duties at the church." N.T. I at 116. The Court sustained Petitioner's objection to this question as irrelevant and beyond the scope of direct examination. Passyn was not asked on direct examination about his time management, or his duties at the church. He stated merely how often he was at the church. N.T. I at 98. The manner in which he spends his time at the church is not relevant to his credibility as a witness.[15]

On cross examination of Passyn, counsel for Respondent asked "how many times were you directly involved in asking [Respondent] about selling the Property...to the church." Id. at 117. Passyn was not asked on direct examination about any efforts the church made to acquire the Property. Counsel for Respondent stated: "[t]hat's what I'm trying to elicit. He talked about [how] he had many conversations with – that's why I'm bringing it up, because it's pertinent." Id. The Court responded that because the subject did not come up on direct, it was beyond the scope of cross. Counsel for Respondent responded that "[i]t doesn't have to come up on direct. On cross examination, I can ask about anything." Id. Though it is relevant to Respondent's theory that the Petition was filed in order to pressure Respondent into selling the Property to

---

[15] Respondent was prevented by the Court from further exploration of the amount of time Passyn spends at the church during the August 9, 2023 hearing because Passyn had already testified that he spends three to four days per week at the church. N.T. II at 45.

36

Petitioner (Resp't's Answer, New Matter and Countercl. to Pet'r's Act 135 Pet. for Appointment of a Conservatory at ¶ 110, 115), the Court properly did not, despite Respondent's interpretation of the Rules of Evidence, allow Respondent to explore this topic during the cross examination of a witness who was never asked about attempts to purchase the Property.

**6. The Court's scheduling of status hearings subsequent to the evidentiary hearing in this matter does not violate the Pennsylvania Rules of Evidence, Pennsylvania Constitution, or United States Constitution.**

The Court is unable to discern the basis for Respondent's argument. Respondent did not raise this or any other similarly spirited argument during oral argument on Respondent's Motion for Post-Trial Relief or during any of the hearings which are the subject of this appeal.

The Court's determination that the Property was blighted and abandoned was made immediately after the evidentiary hearing in this matter. The Court's Order dated June 16, 2023 stated that:

2. Petitioner established that the Property is abandoned and blighted as defined under 68 P.S. § 1105, and that the conditions of the Property are such that a Conservator may be appointed pursuant to 68 P.S. § 1105(d)(1-4)

3. As of the date the Petition was filed on November 30, 2022, the Court finds Petitioner established the following pursuant to 68 P.S. § 1105(d)(5):
   (i.)    The building or physical structure is a public nuisance.
   (ii.)   The building is in need of substantial rehabilitation and no rehabilitation has taken place during the previous 12 months.
   (v.)    The condition of the property increases the risk of fire.
   (vii.)  The presence of vermin or the accumulation of debris, uncut vegetation or physical deterioration of the structure or grounds has created potential health and safety hazards and the owner has failed to take reasonable and necessary measures to remove the hazards.[16]

---

[16] *See* June 16, 2023 Court Order.

Subsequent hearings which Respondent argues violate the United States Constitution were held to afford Respondent an opportunity to undertake Conditional Relief and establish the qualifications of Petitioner's proposed Conservator, should Respondent fail to establish his capacity to undertake Conditional Relief. The matter of whether the Property was abandoned and blighted was settled at June 16, 2023 evidentiary hearing. In fact, the Court instructed Respondent that evidence regarding whether the Property was abandoned and blighted was beyond the permissible scope of the status hearing conducted on October 11, 2023, to which counsel for Respondent stated that "I'm trying to determine what the scope of this is so that I might be able to comply with presenting evidence on [Respondent's] behalf" and that he is "at a loss as to what questions I can ask him," while also alleging that Petitioner "want[s] to curtail any and everything that Respondent is seeking to do to respond reasonably to their embellished allegations..." N.T. III at 65-66.

The status hearings scheduled subsequent to the June 16, 2023 hearing were *not* for rehashing arguments about whether the Property was abandoned and blighted.[17] Instead, the hearings afforded Respondent the opportunity to remediate the Property himself by undertaking Conditional Relief. The Court directed Respondent to produce documentation of property insurance, a scope of work to be completed to remediate the Property, a signed contract with a licensed and insured Philadelphia contractor to perform the work and obtain necessary permits, a written plan for remediation, an engineering report as requested and required by the City of Philadelphia, and proof of Respondent's financial capacity to complete the remediation.[18] At the August 9, 2023 hearing, Respondent produced only documentation of property insurance, documentation that he acquired another dumpster, and an engagement letter with a contractor,

---

[17] *See* June 16, 2023 Court Order.
[18] *See* June 16, 2023 Court Order.

S&F Management. *see* N.T. II The contractor was not listed as a contractor licensed in Philadelphia in the City of Philadelphia's Atlas System and the engagement letter did not describe the scope of work required to comply with the unsafe structure violation. *see* Id. Respondent was afforded another opportunity to present the required documents at the October 11, 2023 hearing, including any available documentation that S&F Management was licensed in Philadelphia.[19] Id. at 26-27; Resp's' Ex. 3. However, rather than provide the required documents, Respondent presented ground level pictures of the Property taken from neighboring properties where no debris was visible in an effort to depict that Property, including the roof declared unsafe by the Department of Licenses & Inspections, was remediated.[20] The Court once again requested the documentation required to substantiate Respondent's request for Conditional Relief, even suggesting that merely supplying photographs of the exterior of the Property from within the Property itself, rather than from the other side of the fence, could be persuasive in Respondent's request for Conditional Relief. N.T. III at 72-76. However, the Court cautioned that if Respondent failed to submit any documentation or photographs within ten days, a Conservator could be appointed.[21] Having received no correspondence from Respondent by October 30, 2023, the Court appointed Petitioner's proposed Conservator, Commonwealth Preservation Alliance, as Conservator.[22]

### 7. The Court did not fail to consider Respondent's Answer, New Matter and Counterclaim.

Respondent argues that the Court "failed and/or refused, upon completion of the June 16,

---

[19] *See* August 9, 2023 Court Order.
[20] *See* October 11, 2023 Court Order.
[21] *See* October 11, 2023 Court Order.
[22] *See* October 30, 2023 Court Order.

2023 evidentiary hearing, to take into consideration Respondent's incorporation of his Answer, New Matter and Counterclaim, which had already been marked as Respondent's Exhibits [sic] during the hearing, from being made a part of the June 16, 2023 evidentiary hearing record, yet allowed and admitted any and all evidentiary matters proffered by Petitioner, regardless of their lack of admissibility status..." Resp't's Rule 1925(b) Statement of Errors Complained of on Appeal at ¶ 4(g).

As an initial matter, the admissibility of Petitioner's exhibits has no bearing on whether Respondent's exhibits should be admitted into the record. Even were it true that the Court admitted all of Petitioner's exhibits regardless of their admissibility while refusing to admit Respondent's Answer, New Matter and Counterclaim into evidence, this evidentiary decision would have no bearing on Respondent's "equal protection rights under the Pennsylvania and U.S. Constitutions," as alleged by Respondent. Id.

The Court notes that "Pleadings listed in § 5.1 (relating to pleadings allowed) shall, without further action, be considered as part of the record as pleadings." 52 Pa. Code § 5.405. As the Court noted, "...the pleadings are the pleadings. Once they're submitted, they are certainly part of our file, part of the official file," but that ordinarily "[i]n terms of exhibits and what supports today's hearing...the pleadings would not [be formally admitted as evidence]." N.T. I at 142. Counsel for Respondent stated that he was not asking "[the Court] to admit specific exhibits. I'm just asking you to mark the fact and make a part of the record the fact that...Respondent submitted a witness and exhibit list." Id. When Petitioner objected to the admission of Respondent's exhibits, as none had been referenced during Respondent's case, and none had been made available to Petitioner or the Court before or during the hearing, counsel for Respondent stated that he is "not moving for the admission of any exhibits," but was instead asking the Court "to include the Respondent's Answer in New Matter [sic] in the official record

40

now," even though he had not yet uploaded that or any other document[23] to the e-filing system. Id. at 143-145. The Court stated: "The record will reflect that the Respondent requested the inclusion of documents and information – documents and material that had not been made available to the Court or to the Petitioner prior to [counsel for Respondent's] appearance in court today but that he represents will be uploaded and presented to the Court." Id. at 145-146.

Given this record, the basis for Respondent's argument is unclear. Respondent's pleading is not appropriately entered as an exhibit, as it merely contains self-serving declarations about Petitioner's motivations in filing the Petition, and denials of facts averred in the Petition. *see* Pennsylvania Lab. Rels. Bd. v. Hall's Furniture Store, 78 Pa. D. & C. 241, 246 (Com. Pl. 1952) ("One party cannot employ his own pleadings as evidence in his own behalf. They are the clearest example of self-serving declarations."). Insofar as Respondent claims that the Court failed to consider his responsive pleading in this matter, the Court notes that Respondent admits to having failed to upload it prior to the evidentiary hearing. N.T. I at 145. Finally, the Court notes that at no point did the Court refuse to permit Respondent's pleading from inclusion in the record. Respondent's argument is without merit.

8. **Respondent was not entitled to judgment in its favor as a matter of law on the issue of whether the Petition for Conservatorship should be granted by virtue of Petitioner's failure to file a written response to Respondent's Answer, New Matter and Counterclaim with a Notice to Plead.**

Respondent argues in his 1925(b) statement that, pursuant to Pa.R.C.P. 1019(b), the averments in Respondent's Answer, New Matter and Counterclaim are "rendered admitted" by Petitioner's failure to file a written response to same, and that, therefore, Respondent was entitled to judgment in his favor.

---

[23] The only documents that Respondent sought to make part of the record of the hearing were counsel's entry of appearance, a witness and exhibit list, and Respondent's Answer to the petition. N.T. I at 144.

41

Pa.R.C.P. 1019(b) states that "Averments of fraud or mistake shall be averred with particularity. Malice, intent, knowledge and other conditions of mind may be averred generally." Pa.R.C.P. No. 1019. This rule defines the adequacy of the content of allegations. It does not proffer any mechanism by which any averment may be deemed "admitted."

Though this Court is not required to speculate as to what Respondent may be arguing, it suggests some analysis of this issue. In his Answer, New Matter and Counterclaim, Respondent avers that he continuously occupied the subject Property and, essentially, that Petitioner knew that Respondent lived there and intentionally misrepresented this fact in its Petition for Conservatorship. Resp't's Answer, New Matter and Countercl. to Pet'r's Act 135 Pet. for Appointment of a Conservatory at ¶ 110, 115. Respondent's Counterclaim asserts that Petitioner filed the Petition to harm Respondent in retaliation for Respondent's refusal to sell the Property to Petitioner, and that the purpose of the Petition is not to remediate blight, but to exert financial pressure on Respondent to sell the Property. Id. at ¶ 122-126. These accusations are couched within averments of Respondent's own beliefs, and general averments as to Petitioner's knowledge. Id. Finally, Respondent alleges that Petitioner "collaborated" with the City of Philadelphia Department of Licenses and Inspections to strengthen the Petition. Id.

In his Answer, Respondent claims that the Petition is fraudulent, and was filed for the purpose of pressuring Respondent, through legal or financial means, to sell the Property. Though Respondent is unspecific about which tort Petitioner is committing or which statute Petitioner is violating, Respondent appears to argue in his 1925(b) Statement that his New Matter and Counterclaim are sufficiently pled under Pa.R.C.P. 1019(b), and that, therefore, Petitioner's failure to file a written Answer to Respondent's New Matter and Counterclaim mean they are deemed admitted under Pa.R.C.P. 1029(b) ("Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A

42

general denial or a demand for proof, except as provided by subdivisions (c) and (e) of this rule, shall have the effect of an admission." Pa.R.C.P. No. 1029.) Respondent apparently argues that no Conservator can be appointed where Petitioner avers that Respondent did reside in the Property, and that Respondent has separate legal recourse against Petitioner where Petitioner avers that it filed the Petition even though it knew that Respondent resided in the Property, contrary to the averments in the Petition.

Averments are admitted by a failure to deny when the averments appear "in a pleading to which a responsive pleading is required." Id. "[N]o responsive pleading is required to an allegation which is [n]ot an averment of fact." Kappe Assocs., Inc. v. Aetna Cas. & Sur. Co., 234 Pa. Super. 627, 631, 341 A.2d 516, 518 (1975). "This means that if a party's new matter does not contain facts supporting an affirmative defense, but rather contains merely conclusions of law, no denial is required because such averments are deemed to be denied." Foust v. Pennsylvania Dep't of Hum. Servs., 305 A.3d 1128, 1136 (Pa. Commw. Ct. 2023) "Whether an allegation is of fact or law is determined by the context disclosing the circumstances and purpose of the allegation." Srednick v. Sylak, 343 Pa. 486, 492—493, 23 A.2d 333, 337 (1941).

In Watson v. Green, the trial court's ruling that facts plead in defendant's answer with new matter were deemed admitted by the plaintiff's failure to file a written response was overruled. Watson v. Green, 231 Pa. Super. 115, 118, 331 A.2d 790 (1974). On appeal, the Plaintiffs alleged that no responsive pleading was required because "the new matter merely denied some of the allegations in the complaint and also stated conclusions of law which required no responsive pleading." Id. at 791. The court agreed, holding that "defendant's allegations in his new matter were either conclusions of law or merely reiterated that which had already been placed into issue in the Complaint and Answer. To require the plaintiff to file a reply to such allegations would serve no useful purpose..." Id.

43

Here, Respondent's New Matter and Counterclaim asserts merely that, contrary to facts averred in the Petition, Respondent did reside continuously in the Property. Rather than treat these averments as facts requiring response, the Court properly declined to deem these averments admitted. The issue of whether Respondent resided in the Property was an explicit subject of the Petition, and Petitioner's failure to re-allege its belief that Respondent in fact did not reside in the Property should not bear on the merits of the Petition. The remaining averments contained in Respondent's New Matter reiterate various legal standards for finding conditions for conservatorship under 68 P.S. § 1105, and are conclusions of law to which no response is required.

Respondent's Counterclaim makes few averments other than that Respondent did legally occupy the Property, petitioner knew that he legally occupied the Property, and that Petitioner misrepresented its knowledge of whether Respondent occupied the Property. To the extent that these can be considered averments of fact, they are already placed into issue by the Petition and Answer.

The remaining averments are that Respondent was forced to secure the services of an attorney, and the averment that Respondent "believes and avers that as a result of [said refusal to engage…in discussions about selling the subject Property to Petitioner,] Petitioner began a course of making complaints…and collaborated with the City of Philadelphia Department of Licensing & Inspection [sic] representatives…" to force Respondent to have to sell the Property. Resp't's Answer, New Matter and Countercl. to Pet'r's Act 135 Pet. for Appointment of a Conservatory at ¶ 123, 125, 126. Where Respondent's belief is averred, deeming it to be admitted would have no bearing on the outcome of the Petition, as Respondent's belief about Petitioner's motives in this action is not probative of the conditions of the Property at the time of filing. Where Respondent avers that Petitioner has colluded with the Department of Licenses &

44

Inspections to create a fraudulent record of violations which support the Petition, Respondent states a conclusion of law to which no response is required.

Even if the averments made in Respondent's Answer, New Matter and Counterclaim were considered to be averments of fact, Respondent's argument is without merit. Act 135 Petitions are governed by the rules of petition practice. PA R PHILADELPHIA CTY RCP Rule 206.1(a)(1)(vii). Pa.R.C.P. states that "[i]f an answer is not filed, all averments of fact in the petition may be deemed admitted." Pa.R.C.P. No. 206.7. The Court, therefore, has discretion over whether facts averred in pleadings should be deemed admitted by a Petitioner's failure to respond.

The exercise of sound discretion militates against deeming any facts averred in pleadings through the course of Act 135 petitions to be deemed admitted by a failure to respond. General Court Regulation No. 2022-01 governing Act 135 petitions does not require responsive pleadings from Respondents, stating instead that "[t]he Respondent may file a verified Answer to the Petition" and "[a]n answer may contain a New Matter." General Ct. Regulation No. 2022-01 (7). Since Respondents are not required to file responsive pleadings to petitions, it is deeply inappropriate for a court to deem a failure to file a written response to be an admission of the facts averred in an affirmative pleading. In this matter, it is likewise inappropriate to deem the facts averred in Respondent's Answer, New Matter and Counterclaim to be admitted where Respondent's New Matter merely asserts facts which contradict the facts asserted in the Petition, Respondent's counterclaim avers Respondent's own beliefs, the facts asserted in Respondent's New Matter and Counterclaim are irrelevant to the material conditions of the Property, and Respondent's Answer, New Matter and Counterclaim were filed *after* the evidentiary hearing which determined the facts in issue. N.T. I at 145.

45

III.    <u>CONCLUSION</u>

For the reasons stated above, the Court requests this Honorable Court affirm its Orders of July 16, August 9, October 11, and October 30, 2023, finding that the Property was abandoned and blighted under Act 135 and appointing Petitioner's Proposed Conservator as Conservator of the Property. The Court respectfully requests that this Honorable Court remand this case for further proceedings.

**BY THE COURT:**

<u>Ann M Butchart</u>
**ANN M. BUTCHART, J.**

46